[No. 1. Decided January 29, 1890.]

LYMAN B. ANDREWS v. KING COUNTY AND WILLIAM COCH-RANE, *as Sheriff of said County.*

UNEQUAL TAXATION — INJUNCTION — PLEADING FRAUD.

Where a complaint alleges a state of facts, which, if proved to be true, would establish fraud as a conclusion of law, it is a sufficient allegation of fraud, without the specific declaration that such acts were fraudulent.

Where an assessor uniformly assessed mortgages, unaccompanied by other evidence of indebtedness, at their par value, and lands and other property at from one-fourth to one-fifth of their cash value, his action was in violation of the organic act (§ 1924, Rev. Stat. U. S.) providing that all taxes shall be uniform, and that the assessment shall be according to the value of the property.

While equity will not interfere to set aside the judgments of assessors or boards of equalization in relation to values, injunction is the proper remedy where officers fraudulently, capriciously or tyrannically refuse to exercise their judgment by adopting a rule or system of valuation designed to operate unequally.

*Appeal from District Court, King County.*

Injunction by appellant to restrain the sheriff of King county from levying upon his household goods and other property to satisfy appellant's delinquent tax, with penalty and costs.    The assessor of King county had assessed appellant's mortgage on lands in King county at its full face value of $30,000, while the lands securing it were assessed at only $2,000; and the complaint alleged that the assessor uniformly assessed demands secured by mortgage upon real estate at their par value, and uniformly assessed lands, improvements and personal property at from one-tenth to one-fourth their actual cash value; that the board of equalization of said county uniformly refused to place any less value or appraisement upon demands secured by mortgages upon lands than their par value; and they at the same time refused to place any greater value upon lands situated in said county than one-fourth their cash value, and they uniformly refused to place any greater valuation upon improvements upon real estate and upon personal property (excepting demands secured by mortgages upon real estate) than from one-fifth to one-fourth of its cash value.    The tax assessed against appellant for his mortgage of $30,000 amounted to $465, of which sum he paid $31, the amount due upon a valuation of $2,000, and refused to pay more. His taxes became delinquent in the sum of $434, and the sheriff of King county threatened to levy upon the household goods, furniture, and other property of plaintiff sufficient to satisfy the same, with penalty, interests, and costs. Appellant brought suit for injunction, praying that defendant be perpetually restrained and enjoined from collecting said so-called delinquent tax, or any part thereof, and for a temporary restraining order.    The defendants interposed a general demurrer on the grounds: First, that the court has no jurisdiction of the subject-matter of the action; second, that the complaint does not state facts sufficient to constitute a cause of action.

The demurrer was sustained, the plaintiff elected to stand upon his complaint, and judgment was entered, dismissing the bill at plaintiff's costs. The appeal is from that judgment.

*W. R. Andrews,* for appellant.

Counsel cited in argument, Code Wash. T., § 2832; Rev. St. U. S., § 1924; *Exchange Bank of Columbus v. Hines,* 3 Ohio St. 15; *Cummings v. National Bank,* 101 U. S. 157; *Pelton v. National Bank,* 101 U. S. 145–6; *State Railroad Tax Cases,* 92 U. S. 607; Cooley, Taxation (2d ed.) 218; *Woodman v. Auditor General,* 52 Mich. 29; *Merrill v. Humphrey,* 24 Mich. 173; *State v. Central, etc.,* R. R. Co.,* 7 Nev. 105; *Weeks v. Milwaukee,* 10 Wis. 186.

*Stratton & Fenton* and *J. T. Ronald,* for appellees.

Injunctions to restrain the collection of taxes will seldom be granted, and when allowed the complainant must bring himself under some well-recognized head of equity jurisdiction. *State Railroad Tax Cases,* 92 U. S. 575; *Van Wagener v. Board of Supervisors,* 39 N. W. Rep. 105; Cooley on Taxation (2d ed.), 760–875.

The regular action of a board of supervisors in matters of taxation is not subject to any review in the courts. *Bixler v. Sacramento County,* 50 Cal. 698.

A court of equity has no power to make or equalize assessments. *Ketcham v. Railroad Co.,* 4 Dill. 41; *Kansas, etc., R. R. Co. v. Ellis,* 19 Kan. 584; *Gibb v. County Commissioners of Hampden,* 19 Pick. 298; Cooley on Taxation (2d ed.), 748–50, notes 4 and 1; *Johnson v. Roberts,* 102 Ill. 655.

The theory of plaintiff would indicate that he may experiment with the board of equalization by making an application for relief, and if the particular relief be not granted, he may try his claim in another tribunal without appeal, or review, or certiorari. Under § 2877 of the code

the power to hear and determine all matters concerning assessments is conferred upon the board of equalization, and it is apparent, from the context, that this power is exclusive in the first instance. *People v. Lothrup*, 3 Col. 450; *People v. Big Muddy Iron Co.*, 98 Ill. 16; *Republic Ins. Co. v. Pollack*, 75 Ill. 294; *Spencer v. People*, 68 Ill. 510; *Union Trust Co. v. Webber*, 96 Ill. 352; *Ottawa Glass Co. v. McCaleb*, 81 Ill. 556; *Wagoner v. Loomis*, 37 Ohio St. 571; *People v. Goldtree*, 44 Cal. 323; *Matt v. Eager*, 46 N. Y. 100; *Smith v. Supervisors*, 30 Iowa, 531.

The opinion of the court was delivered by

DUNBAR, J. — In the investigation of this case there are three leading propositions to be considered, viz.:

*First:* In order to put in issue the question of fraud, is it necessary to allege in terms that defendants were guilty of fraud?

*Second:* Conceding the allegations in the complaint to be true, are the facts there stated sufficient to establish a *prima facie* case of fraud?

*Third:* Had plaintiff any other remedy than the one invoked?

So far as the first proposition is concerned, we are clearly of the opinion that if the complaint allege a state of facts, which, if proved to be true, would establish fraud as a conclusion of law, that it is a sufficient allegation of fraud; and that the declaration of the pleader that such acts were fraudulent, is in no wise essential or necessary to put the question of fraud in issue.

In the other two propositions, which we will consider in some degree together, grave questions are presented. Questions, the importance of which demand of the court painstaking investigation; and the rightful determination of which is not so important in view of the amount of money involved in the particular case, as it is in view of the effect which such determination will have, both on the

rights of the individual citizen, and upon the state in the determination of its laws.

The principal contention of the plaintiff, and the one to which the court will address itself especially (the determination of which will be conclusive in this case) is, that the assessor uniformly and persistently, intending to injure and oppress all persons holding mortgages, of which there was a large class in King county, and especially this plaintiff; and intending to relieve persons owning lands and other property in King county, outside of mortgages, of their just burden in maintaining the public revenue, assessed mortgages, which were unaccompanied by any other evidence of their indebtedness, at their par value, without any regard to the valuation placed by him upon the lands mortgaged to secure the payments of said demands; while he, at the same time, refused to assess lands in said King county at more than one-fourth their cash value; and refused to assess other property at more than from one-fifth to one-fourth of its cash value; and alleges the fact to be that he assessed plaintiff's mortgage at $30,000.00, while he assessed the identical land pledged to the payment of the said demand of $30,000.00 at only $2,000.00, notwithstanding plaintiff's said mortgage was not accompanied by any other evidence of indebtedness, and that the plaintiff's remedy upon his said demand will be entirely exhausted by a foreclosure of said mortgage and a sale of the lands, tenements and hereditaments pledged to him therein. And that the action of the assessor in such alleged discrimination was endorsed and confirmed by the board of county commissioners of said King county, while sitting as a board of equalization; which said action of the assessor and board of equalization, plaintiff claims was in violation of § 1924 of the revised statutes of the United States, which declares, "that all taxes shall be equal and uniform, and no distinctions shall be made in the assessments between different kinds of property; but

the assessment shall be according to the value of the property."

No doubt the essential idea of the statute is, that each person shall pay a tax in proportion to the value of his property. And the fact that plaintiff's property is admitted to be assessed at its par value will not deprive him of the constitutional guaranty, if by the undervaluation of other property he is compelled to bear more than his just proportion of the burden of taxation.

If A. is the owner of property of the value of one thousand dollars, which is assessed at one thousand dollars, and B. is the owner of property worth one thousand dollars, which is assessed at five hundred dollars, the practical result to A. is the same as though B.'s property had been assessed at its value of one thousand dollars, and his property at an overvaluation, or at two thousand dollars. In either case the resulting injury is the same; he has been subjected to double the burden that B. has, while actually possessing the same amount of property. The just principle of taxation is equally violated in both cases; and the constitutional mandate that "all taxes shall be equal and uniform, and that the assessment shall be according to the value of the property," is equally ignored. And when such an abuse of official discretion affects a large class of individuals, it will be subject to the law's revision. In view of the inconvenience to the public which will arise from any derangement in the system of the collection of taxes, the law will not regard accidental omissions or minor mistakes. Nor will courts of equity interfere to correct errors in judgment as to valuation, because, as has been well said by Judge Cooley, "value is matter of opinion, and when the law has provided officers upon whom the duty is imposed to make the valuation, it is the opinion of those officers to which the interests of the parties are referred." But according to the same learned author, "it is possible, however, that there may be circumstances under

which the action of the officers will not be conclusive."
Cooley, Taxation, 218.   And one of those circumstances
is where the officer refuses to exercise his judgment, and by
an arbitrary and capricious exercise of official authority,
seeks fraudulently to defeat the law, instead of enforcing
it.   In such a case the tax-payer will not be left completely
at the mercy of the assessor.

In this case, if the averments of the complaint are true,
and the assessor uniformly taxed mortgages at their par
value, and land and other property at from one-fourth to
one-fifth of its cash value, and, in accordance with such
uniform rule of assessment adopted by him, assessed the
plaintiff's mortgage, which was unaccompanied by any
other evidence of indebtedness, at $30,000, and the iden-
tical land mortgaged for the payment of the said $30,-
000, at only $2,000, the conclusion is inevitable that the
honest judgment of the officer was not exercised; and that
a rule or system of valuation was adopted by the assessor,
and confirmed by the board of equalization, which was de-
signed to discriminate unfairly against one class of tax-
payers, and which was in plain contravention of the con-
stitutional law which provides that ''all taxes shall be
uniform, and that the assessment shall be according
to the value of the property.''   The principles involved
in this case were passed upon by the supreme court
of the United States in the case of *Cummings v. National
Bank*, 101 U. S. 153, which is a leading case, and must
be regarded as settling the law there enunciated.   In
that case the Merchants' National Bank of Toledo filed
its bill in equity to enjoin the treasurer from collecting
a tax wrongfully assessed against its stockholders, alleging
that in the valuation of said shares they were estimated
at a much larger sum in proportion to their real value
than other property in the same city, county and state.
It is true that this decision was rendered under a statute
of the State of Ohio providing for such a manner of as-

sessment as was complained of, and providing expressly for an injunction against the collection of a tax illegally assessed.   But as expressive of the opinion of the court, in rendering its decision, it says : "Independently of this statute, however, we are of the opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the constitution; and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power." The case at bar is a stronger one than the case which called forth that opinion; for in that case no actual fraud or capriciousness on the part of the officers, or intent to unjustly discriminate, was claimed, the assessment being made under the provisions of a statute the constitutionality of which was in question.   And Mr. Chief Justice WAITE, in rendering a dissenting opinion, inferentially affirms the position taken by us when he says: "The valuation as finally fixed by the proper officers or equalizing board, under the law, is, in my opinion, conclusive when there has been no fraud, as it seems to me this case comes within the operation of this principle."

In the *State Railroad Tax Cases*, 92 U. S. 575, cited by both plaintiff and defendant, and largely relied upon by defendant in the argument of this case, and, as stated by counsel for defendant, the case on which the court below decided this case adversely to plaintiff's interest, we can see no enunciation of the law which is not in harmony with the view taken by plaintiff in this case.   There the contention of the plaintiff was, that the statute of Illinois, and the rule adopted by the board of equalization under the statute, was not in conformity with the principles of uniform taxation.  The great point in this case, as stated by the attorney general, was the alleged unconstitutionality of the act cre-

ating the board of equalization, and it was not contended
that the action of the board was not in accordance with the
statute.    Hence, there was eliminated from this case any
question of fraud by the officers in refusing to exercise
their discretion; and the rule prescribed by the board in
this case was for the very purpose of ascertaining the fair
cash value of the capital stock and franchise of the rail-
road companies.    If there was an error it was simply an
error of judgment; in fact, it can be readily gathered from
the opinion of the court, that it did not think there had
been even an error of judgment, either by the board of
equalization or the legislature.    Justice MILLER, in render-
ing the opinion of the court, says: "The statute of Illinois,
and the rule adopted by the board of equalization, under
the power conferred by the clause we have just recited, may
not be the wisest mode of doing complete justice in this dif-
ficult matter; but we confess we had, on the whole, seen
no scheme which is better adapted to effect the purpose, so
far as railroad corporations are concerned, of taxing at
once all their property, and of making the tax just and
equal in its relation to other taxable property."

This court cannot say as much for the rule adopted by
the assessor of King county.    On the other hand, it would
be hard to conceive of a rule less liable to make the taxa-
tion of mortgages just and equal in its relation to other
taxable property.    The court in the case above cited
further says, before an injunction will be granted to re-
strain the collection of taxes, that "there must be an
allegation of fraud, that it creates a cloud upon the title,
that there is an apprehension of a multiplicity of suits, or
some cause presenting a case of equity jurisdiction;"
plainly inferring that if one of these stated cases did exist,
that the case would be brought within one of the recognized
rules of equity jurisdiction.    It also states the doctrine
that no injunction can be granted until it is shown that all
the taxes conceded to be due, and which the court can see

ought to be paid, have been paid. The complaint in this case shows that such an amount of taxes has been paid and tendered by plaintiff. In 10 Wis. 242, in *Weeks v. City of Milwaukee*, in a case nearly parallel with this, and under the constitutional provision that " the rate of taxes shall be uniform," the court decided that where the taxes on the land of one citizen had been illegally increased by reason of the illegal exemptions of other lands from taxation, an injunction will be granted to restrain the sale of such lands for the payment of such illegal taxes. In that case the complaint showed that the Newhall House, and the land on which it stood, had been purposely exempted from taxation, and, as plaintiff alleged, unjustly increasing his proportion of tax. It is true that this exemption only went to city taxes; but the decision was based on the broad principle of uniform taxation, and of the rights of individuals under that constitutional principle. The supreme court reversed the order of the lower court in refusing the injunction, and Justice PAINE in rendering the opinion of the court says: " I have no doubt this exemption originated in motives of generosity and public spirit. And perhaps the same motives should induce the taxpayers of the city to submit to the slight increase of the tax thereby imposed on each, without questioning its strict legality. But they can not be compelled to. No man is obliged to be more generous than the law requires, but each may stand strictly upon his legal rights." That the property in the above cited case was *wholly* exempted from taxation, and the property in the case at bar only partially exempted, makes no difference in principle; it is only a difference in degree. Substantially the same announcement of the law governing such cases was made in the case of the *State v. Central Pacific Railroad Co.*, 7 Nev. 99. It was urged by defendant that the taxation in other counties in the state might be rendered ununiform by any interference with the value of plaintiff's property as fixed

by the assessor. This would be a subject for the attention of a board of equalization, which the state has a right to provide for by legislative enactment, and which could make inter-county laws or regulations to secure uniformity of assessment between the counties. But no such officers exist in this state; and a failure of the state to provide for such a tribunal will not militate against the rights of the individual which are guaranteed to him by the laws of the state and the constitution or organic act.

We think the uniform ruling of the higher courts has been that, while equity will not interfere to correct mere mistakes or inadvertencies, or to contravene or set aside the judgments of assessors or boards of equalization in relation to values, it will interfere when the officers fraudulently, capriciously or tyrannically refuse to exercise their judgment by adopting a rule or system of valuation designed to operate unequally, and to violate a fundamental principle of the constitution.

We believe that the provisions of the statute in relation to the manner of making assessments, as set forth in § 2832 of the code, are mandatory and must be observed by the assessor. Applying the law, as we believe it to be, to the facts in this case, as shown by the complaint, which is the only statement of facts in the case, we are of the opinion that plaintiff was entitled to the remedy prayed for; and that defendant's demurrer should have been overruled and the case tried upon the allegations of the complaint.

The judgment of the court below is reversed, and the case remanded for further proceedings in accordance herewith.

STILES and HOYT, JJ., concur.

ANDERS, C. J., and SCOTT, J., concur in the result.