496           HURT ET ALS. *v.* BROOKS ET ALS.

## Richmond.

### HURT ET ALS. v. BROOKS ET ALS.

#### December 15th, 1892.

1. WILLS—*Construction*—*General intent.*—Where there is a manifest general intent, the construction should be such as to effectuate it, though thereby some particular or subordinate intent may be defeated, or the literal import of the words be departed from.

2. IDEM—*Case at bar.*—Testator, after giving certain property to his son A, then added: "This property, thus specified by me, and given to my son A, during his natural life, at his death I give and bequeath the same to his children, lawfully-begotten heirs of his body. and their descendants, if he should have any to die, leaving children, during his natural life." The general intent of the will was to make the shares of testator's children equal, and to limit the property devised and bequeathed to A and to the other children to the natural life of each. In the will there were particular words which might raise a presumption of a fee simple estate in A.

HELD:

> Those particular words were controlled by the general intention that A should take an estate for life only, with remainder to his children.

Appeal from decree of circuit court of Campbell county, rendered October 28th, 1890, in a suit wherein John L. Hurt and certain children of Alexander Brooks were complainants, and Sarah E. Brooks, the widow, and other children of the said Alexander Brooks, and Perrow and Staley, trustees, were defendants, the object of the suit being to have the land devised, as the bill alleges, to Alexander Brooks for life, and at his death to his children, partitioned, or sold for distribution of the proceeds. The decree being adverse to complainants, they appealed. Opinion states the case.

*R. G. H. Kean*, for appellants.

*Kirkpatrick & Blackford*, for appellees.

LACY, J., delivered the opinion of the court.

In 1840 one James Brooks, of Campbell county, died, having made and published his will and codicils, which were duly probated after his death. In his will and codicils he provides for his seven children, making provision for each, and declaring his purpose to make them equal beneficiaries under his will.

The controversy in this case arises over the proper construction of the ninth clause of the said will, which is as follows, so far as it is material to be stated :

" Ninth Item.—I give and bequeath to my son, Alexander, the half of the tract of land on which I live—west side of Lynch's creek—including the mansion house in which I live, the east boundary described in Benjamin's lot. Also, I give to my son, Alexander, during his natural life, the use and benefit of six negroes, names as follows [names], and one hundred dollars' worth of small property [enumerated], all of which property of land, negroes, half of my mills, with their profits, and every character of property I thus give my son, Alexander, I estimate at the sum of $10,300, and the property or general dividend of my whole estate for each child, being one seventh of my whole estate, I estimate at $9,776.98, which leaves Alexander in debt to my estate the sum of $524.02, which sum I will that Alexander pay to my estate, in order that each child may receive his equal according to this will.

" This property, thus specified by me, and given to my son, Alexander Brooks, during his natural life, at his death I give ·and bequeath the same to his child or children, lawfully-begotten heirs of his body, and their descendants, if he should have any to die, leaving children, during his natural life.

This property thus given by me to my son, Alexander, during his natural life, after his death I give and bequeath the same to his child or children, if any, forever, with the increase of the female slaves; but if my son, Alexander Brooks, should die, leaving no child or children, then, and in that case, I give, devise, and bequeath the land and slaves in this clause mentioned, together with the increase of the female slaves in said lot, to be divided *per stirpes* amongst all my grandchildren equally," (designating them by their parents,) and repeats his plan of equality among his children, and the sum Alexander is to pay to this end.

Alexander J. Brooks survived his father, grew to full age; married, and a number of children were the issue of the marriage; and, a divorce suit having been commenced by his wife, the appellee, Sarah E. Brooks, against the said Alexander J. Brooks, conveyed the said land to trustees for the support of his wife and children, for and during the life of the said Alexander J. Brooks; and several of his children sold to purchasers for value, during his life, their interest in the said land. Among these, certain parties conveyed their interest to the appellant, John L. Hurt, describing it as the land devised to Alexander J. Brooks for life, and at his death to his children, by the will of his father, James Brooks, deceased.

Alexander J. Brooks having died in November, 1889, on the 2d day of January, 1890, the said John L. Hurt and certain children of the said Alexander Brooks filed their bill against the said Sarah E. Brooks, the widow, and other children of the said Alexander Brooks, and Perrow and Staley, trustees, to have partition of the said land devised, as the bill alleges, to Alexander Brooks for life—during his natural life—and at his death to his children, and the descendants of any child or children of his who should die during Alexander's natural life, in fee simple; and further reciting the said will of James Brooks, reciting the marriage of the said Alex-

ander J. Brooks, and the children and their descendants surviving him, and the transaction aforesaid by them, concerning the said land, during his life; or that the said land be sold, if the partition be deemed impracticable, for distribution of the proceeds.

The said Sarah E. Brooks, the widow, and Susan W. Brooks answered, claiming that the land in question was devised by James Brooks to Alexander J. Brooks in fee simple, and exhibited a will made by the said Alexander J. Brooks a few days before his death—on the 5th day of November, 1889—as follows :

.." This is my last will — testament : I wish to give all my interest in this estate (the Brooks estate), and wish it to be conveyed after my death, to my wife, Sallie E. Brooks, and daughter, Susan W. Brooks, equally "; signed by the said Brooks with his cross-mark, and witnessed by three witnesses.

In August, 1890, the court directed the land to be rented out by the sheriff in parcels; and on the 28th day of October, 1890, rendered the decree appealed from here, by which the court decided that Alexander J. Brooks took a fee simple interest in the land in the bill and proceedings mentioned (and of which a partition is prayed in the said bill), under the will of his father, James Brooks, deceased, and that, therefore, the plaintiffs have no title nor interest in the said land ; dismissed the bill, and decreed . that the sheriff assign the rent bonds taken by him to Sarah E. Brooks, as she held a life interest under a deed from said Alexander J. Brooks in his lifetime; from which decree the case was brought here by appeal.

The only question involved in this appeal is the true construction of the will of the said James Brooks. The ninth clause of the said will provides, as to the share of his estate devised to Alexander J. Brooks, as follows :

" This property, thus specified by me, and given to my son, Alexander Brooks, during his natural life, at his death I give

and bequeath the same to his children, lawfully-begotten heirs of his body, and their descendants, if he should have any to die during his natural life."

In construing this will, it must be remembered that wills are construed to operate according to the intention of the parties, if by law they may, and, if they cannot in one form, they shall, if possible, operate in that which by law will effectuate the intention. And in later times the judges have gone farther than formerly, and have had more consideration for the substance—to-wit, the passing of the estate according to the intention of the parties—than to the mere manner of passing it. So legal presumptions and rules of construction which would otherwise yield to an intention satisfactorily expressed in the instrument itself, and, indeed, in the face of such expression of intent, have no application. It is not allowable to interpret what has no need of interpretation, nor will the law make an exposition against the express words and intent of the parties. In short, where there is a manifest general intent, the construction should be such as to effectuate it, though by that construction some particular or subordinate intent may be defeated, or the literal import of the words be departed from.

It is not admissible, by adhering to the letter, to defeat the manifest object and design of the instrument. Min. Inst., 949, 950, 951; 3 Lom. Dig., 196–'7. The construction should be upon the entire instrument, and not merely upon disjointed parts of it, so that every part of it, if possible, may take effect.

Judge Joynes said, in *Tebbs* v. *Duval*, 17 Gratt. 361: " Legal presumptions and rules of construction yield to the intention of the testator apparent in the will, and have no application where the intention thus appears. *Randolph* v. *Wright and Wife*, 81 Va. Rep. 612; *Shelton* v. *Shelton*, 1 Wash. 53 ; *Kennon* v. *McRoberts*, Id. 99.

The will of James Brooks was a lengthy document, and containing many provisions, but the general scope of the instrument, which was often expressed, was to make each child equal, each share allotted being valued, and the whole estate valued, and the one-seventh stated, and each required to be equalized with the said one-seventh by paying or receiving the difference estimated in each case, and the same provisions are made as to each.

In the ninth clause it is provided, as has been stated, and that this property thus given by me to my son, Alexander, during his natural life, after his death I give and bequeath the same to his child or children, if any, forever; but if he should die leaving no child or children, (he was then a child under age, who had not finished his education, as appears by the will and codicils attached,) then, in that case, the property given him was devised and bequeathed to the testator's grandchildren, *per stirpes.*

It is obvious, from a reading of the whole ninth clause and the whole will, that the testator intended to limit the property devised and bequeathed to Alexander and to the other children to the natural life of each, and the grandchildren to take the same in fee after his death.

A. J. Brooks took an estate for life only, and not a fee simple remainder to his children who survived him, or the descendants of such as had died during his life. If the intention of the testator, clearly expressed and often reiterated, is to be followed, there can be no doubt that Alexander took a life estate only. The will was written in the years 1838–'39, and the testator died in 1840; but the remainder is clearly expressed to children, after his death. When the words " heirs," or " heirs of the body," are used, they are coupled with the word " children," following a clearly-expressed estate for life. The children were to take nothing unless they survived their father, when they took an estate in fee. The children did survive

him, and became entitled to his estate, not by descent from Alexander, but as purchasers from the testator, James Brooks. It follows that there was nothing for the will of Alexander to operate upon, and the circuit court erred in decreeing the estate to his devisees.

We think the decree of the circuit court is erroneous, and the same must be reversed and annulled, and the cause remanded to the said circuit court for further proceedings, according to the prayer of the plaintiffs' bill, and for final decree in the cause, in accordance with this opinion.

DECREE REVERSED.