SIOUX FALLS SAVINGS BANK, Respondent v. MINNEHAHA COUNTY, Appellant.

(135 N. W. 689.)

1	Taxation—Equality—Uniformity—Mode of Assessment.
Constitution, Art. 11, Secs. 2, 4, providing that taxes shall be uniform on all property according to value ascertained by rules prescribed by general law, etc., so that taxes shall be proportional to value, recognizes no classes of property,

but leaves the legislature to provide rules of appraisement and assessment, but the rules need not necessarily result in absolute uniformity, equality, and proportion.

2. **Taxation—Excessive, Unequal, Disproportionate Assessment—Remedy.**

For a merely excessive, unequal, or disproportionate assessment, where no principle of law is intentionally violated in making it, but involving merely error of judgment of assessment officers, the sole remedy is through application for abatement to the assessor or equalizing boards, whose decisions are final except where they act without jurisdiction, or are guilty of fraud in fact or law. Courts cannot give aid in such cases unless specially authorized by statute.

3. **Excess of Jurisdiction—Fraudulent Assessment—Remedy.**

But wherever the taxing tribunal either exceeds its jurisdiction by following some plan forbidden by statute, or through wilful intent or desire to oppress some class of taxpayers designedly makes an unequal and disproportionate valuation, or conspires to disregard a clear mandate of law, resulting in injustice to a class or classes of taxpayers, or an individual taxpayer, courts will extend such relief as is best fitted to correct the wrong. If the facts concerning the alleged scheme or plan to impose upon the bank stock of the state an unjust share of the public burden, involving action by the state board of equalization in deliberately and intentionally equalizing bank stock at 40 per cent. of its value while intentionally equalizing valuation of all other property at not exceeding 33 1-3 per cent., as is confessed by the demurrer to the complaint, a legal right of respondents was infringed.

4. **Taxation — Assessor and Local Boards — Equalization — State Board—Remedy.**

Respondents claim a large share of property was assessed at less than one-third its value, and while complaining of the action of assessor and city board of equalization, concede the city board equalized the assessment as returned to it and left their property at one-third; they do not object to this, but plead they offered to pay same and they bring the money into court. Held, in an action to enjoin the collection of an increased assessment, on these facts, it is unnecessary to consider the action of any officer or board except the state board of equalization, such board alone having wronged respondents.

5. **Disproportionate Assessment—Remedy Sought Not Applicable—Equalization by State Board—Statutory Provisions Construed.**

As the complaint shows that respondents asked the state board of equalization to equalize values by raising assessed values of all properties, as returned, to the full and true value, they were asking it to do that which they must have known

it could not legally do. The court takes judicial notice that to raise valuation of all assessed property from 33 1-3 or 40 per cent. to 100 per cent. thereof would increase the total assessed valuation many times the $3,000,000.00 statutory limitation. The constitution does not require a full valuation, it does guarantee equality. The statutory provisions (Pol. Code, Sec. 2076 et seq.) looking to full valuation must give way to provision directly limiting state board in its power to raise values. Respondents should have asked state board to merely equalize valuations under its own rules; Bagley Elev. Co. vs. Butler, 24 S. D. 429, 123 N. W. 866, is not inconsistent with this holding.

6. **Courts—Interpretation of Decision—Precedent.**

The holdings of courts should be read in the light of the facts before the court for consideration; so held, as to this court's decision in Bagley Elev. Co. vs. Butler, 24 S. D. 429, 123 N. W. 866.

7. **Assessment by State Board—Review on Certiorari.**

It can hardly be presumed that the state board of assessment, if applied to to perform its lawful duty, would refuse to comply with such request. But if, believing it had the right to equalize assessments by leaving bank stock assessed at a greater per cent. of its value than other property, it refused to do its duty, its record would doubtless have shown it had exceeded its jurisdiction in manner of equalizing, using the 33 1-3 per cent. as basis of valuation of all property except bank stock and 40 per cent. as to bank stock. Its action could then have been reviewed upon writ of certiorari. State v. State Board, 3 S. D. 338.

8. **Taxation—Injunction to Restrain Collection of—Unequal and Disproportionate—Not if Injustice Results.**

Injunction to restrain collection of a tax owing to unequal and disproportionate assessment should only be granted as a last resort, and where no better remedy was or had been available; not when such relief results in injustice less in degree but identical in kind with that sought to be remedied.

(Opinion filed, April 2. 1912.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by the Sioux Falls Savings Bank and others against Minnehaha County and others, to enjoin said county and its auditor from extending a $51,000.00 increase of assessment made by the state board of equalization, upon the tax list and from adding said sum to the aggregate assessed valuation, etc., and from extending any part of same against plaintiffs' bank stock,

and for cancellation of such increase upon the tax list; and enjoining the county treasurer of said county from collecting said increase, etc.   From a judgment overruling a demurrer to the complaint, defendants appeal.   Reversed.

*Martin Bergh,* for Appellants.

The appellants herein contend that the plaintiffs have no cause of action for the following reasons:

1.   That the action of the State Board of Equalization in the premises, having performed its duty in good faith and exercised its best judgment, which the law implies, cannot be set aside by the courts.

2.   That the law requires the classification of property for the purpose of taxation, and the fixing of values upon the different classes by the taxing officers.   The state board thereupon equalized the tax rate and valuations among the various classes, and the tax finally imposed is equal and uniform, within the law, where all property of any particular class is taxed alike.

3.   That there was a general undervaluation, including plaintiff's property, of all the property in the state, as to the assessment complained of herein, and plaintiffs have no right to complain on the ground that other classes of property are assessed at a less percentage of its full value than their own.

4.   That plaintiffs have mistaken their remedy.

Political Code, § 2111, gives the State Board of Equalization the right to change the assessed valuation of the various classes of real and personal property throughout the state, in such manner as may be deemed equitable and just.   When all property is assessed at a rate far below its full value, discrimination as to the rate applied to a particular class is a matter of judgment on the part of the equalizing board, the exercise of which, even if erroneous, does not warrant interference by the court.   27 Am. & Eng. Encycl. L. (2nd Ed.) 720; 1 Desty on Taxation, 498; Chamberlain v. Walter, 60 Fed. Rep. 788.

Want of discretion must be palpable before the court will interfere.   Jaggard on Law of Taxation, 327; 1 Desty on Taxation, 498.

The ascertainment of the value of taxable property is judicial, and requires the judgment of the assessor under his official oath. The same may be said of the board of review. The law imposes this duty upon those officers; and if they act in good faith, and exercise their best judgment, mere errors in judgment will not defeat their action. Iron Co. v. City of Negaunee, 116 Mich. 430, 435.

The State Board of Equalization found, undoubtedly, in the case at bar, that there were good and evident reasons for placing a higher valuation on bank stock than on other personal property, by taking into consideration the character of the property, its advantages and opportunities for investment, earning capacity and value, and other elements which enter into and constitute the value of property. Wagoner v. Loomis, 37 Ohio St. 571; 27 Am. & Eng Encycl. (2nd Ed.) 690; State ex rel. Am. Expr. Co. v. State Board of Ass'mt, 3 S. Dak. 338; People ex rel Equitable Gas. I. Co. v. Barker, 144 N. Y. 94; Republic I. Ins. Co. v. Pollak, 75 Ill. 292; Coal Run Coal Co. v. Finlen, 124 Ill. 666; Ottawa Gas-Light & Coke Co. v. Downey, 127 Ill. 201; People v. District Court, 68 Pac. Rep. 242; People v. Henderson, 12 Colo. 369; Farmers' Bank Etc. v. Board, 97 Cal. 318; Webster v. City of Lincoln, 69 N. W. Rep. 394.

Political Code, § 2108, divides personal property into various classes for the purpose of taxation, of which the total value of shares of bank stock is named as a separate class. Real property is divided into lands, town and city lots. Other classes are made up of railroad property, telegraph and telephone property, and the business and property of express and telephone companies. These classes of property are taxed by different methods and at different rates and bases of valuation, which plan of taxation is as old as the history of the state.

The requirement of equality and uniformity does not preclude the division of things taxable into classes, and the imposition of taxes which, while bearing equally upon the different members of each class, bear unequally upon the classes in the aggregate. A legislative division of this sort cannot be inter-

fered with by the courts.   27 Am. & Eng. Encycl. L. (2nd Ed.) 604 et seq; Cooley on Taxation, 152.

All assessments and all taxes are not required to be equal and uniform.   Ottawa County v. Nelson, 19 Kan. 238.   See also: State v. Lathrop, 10 La. Ann. 398; People v. Coleman, 4 Cal. 46.

And the fact that one class of business is taxed and another is not, or that different classes are taxed unequally, does not affect the validity and uniformity of the tax.   Singer Mfg. Co. v. Wright, 33 Fed. Rep. 121.   See also: Wis. Cent. R. Co. v. Taylor County, 52 Wis. 37; Am. & Eng. Enc. L. (2nd Ed.) 600; Kelly v. Rhoads, 7 Wyo. 237; Geselthorpe v. Furness, 20 Mont. 299.

There is no evasion of the requirement of equality or uniformity so long as all in the same class are subject to the same tax under the same conditions.   These principles have been repeatedly affirmed by the supreme court of the United States. Pacific Expr. Co. v. Seibert, 44 Fed. Rep. 310, 317.

The taxation of private banks and bankers on the aggregate value of the property invested in the business, while incorporated banks, including natonal banks, are taxed by means of an assessment of the value of the corporate shares, does not constitute a discrimination against national banks, though in one case United States bonds are treated as exempt, and deducted from the aggregate of stocks and bonds, and in the other the value of the corporate shares is determined by including the value of United States bonds.   National State Bank v. City of Burlington, 94 N. W. Rep. 234.

The fact that the laws of the state impose one rule of assessment and taxation upon shareholders in corporations other than banking associatons, and another upon the shareholders in banks, whereby a higher taxation incidentally rests upon the latter, does not show a discrimination against the latter.   Utica First Nat. Bank v. Waters, 7 Fed. Rep. 152; People's Nat. Bank v. Mayre, 107 Fed. Rep. 570.

The discrimination forbidden by section 5219, U. S. Rev. Stat. does not have reference to the rate of taxation upon the holders of evidences of loans and securities, if these securities

belong to a class of investments which does not compete with the business of national banks.   Aberdeen First Nat. Bank v. Chehalis County, 166 U. S. 440.

The term "money capital," as employed in this section, forbidding greater taxation of shareholders of national banks than is imposed on other moneyed capital, does not include capital which does not come into competition with the business of national banks, and it must be satisfactorily made to appear by the proof that the moneyed capital claimed to be given an unjust advantage is of this character.   Commercial Bank v. Chambers, 182 U. S. 560; Wellington First Nat. Bank v. Chapman, 173 U. S. 205; Mercantile Nat. Bank v. Hubbard, 98 Fed. Rep. 465; Utica First Nat. Bank v. Waters, 7 Fed. Rep. 152; Mercantile Nat. Bank v. New York, 121 U. S. 138.

The declarations of the courts upholding classification, should be imported to the acts of taxing authorities in imposing different rates in the taxation of different classes.   In re McKennan's Estate, 130 N. W. 33, 37; Com. v. Sharon Coal Co., 164 Pa. 304; Seabolt v. Northumberland County, 1887 Pa. 318.

The 14th Amendment, forbidding any state to deny to any person within its jurisdiction the equal protection of the laws, does not prevent the classification of property for taxation, provided all property in the same class is treated alike.   Home Ins. Co. v. New York, 134 U. S. 594, 606; Farmers Ins. Co. v. Dobney, 189 U. S. 301; Magoun v. Ill. T. & S Bank, 170 U. S. 283.

If all in the same class are taxed alike, the requirement of the Mississippi Constitution, of uniformity and equality of taxation, is met.   Vicksburg Bank v. Worrell, 67 Miss. 47, 7 So. Rep. 219; In re Oberg, 21 Oreg. 406; Knoxville & O. R. Co. v. Harris, 99 Tenn. 684, 43 S. W. 115; Columbus S. R. Co. v. Wright, 89 Ga. 574, 15 S. E. 293; Smith v. Stephens, 173 Ind. 564, 91 N. E. 167.

Equity will not afford relief to a complainant who cannot show that the burden imposed on him is greater than it would have been, if the laws had been faithfully executed, by taxing all property according to its true value in money.   Wagoner v. Loomis, 37 Ohio St. 571, 582.

But the supreme court of·this state has definitely settled this question of unequal assessments below the full value of property, and denied any right to plaintiffs herein to complain.   Bagley Elevator Co. v. Butler, 123 N. W. Rep. 866.

The above decision is amply sustained by the courts of other states.   Carroll v. Alsup, 107 Tenn. 260, 291; County of Cochise v. Mining Co., 71 Pac. Rep. 946; Lowell v. County Com'rs, 152 Mass. 372, 375; Louisville Ry. Co. v. Commonwealth, 105 Ky. 710; People v. Delaware County, 60 N. Y. 381; Republic Life Ins. Co. v. Pollak, 75 Ill. 292; 27 Am. & Eng. Enc. L. (2nd Ed.) 722.

If the State Board of Equalization exceeded its authority and ordered an illegal assessment by its action complained of in the case at bar, the proper remedy of the plaintiffs would have been an application to this court for a writ of certiorari.   State ex rel. Am. Expr. Co. v. State Board, 3 S. Dak. 338; Code of Civil Procedure S. Dak. § 754; Central R. R. Co. v. State Board of Ass'm't, 48 N. J. L. 1; People v. Keno, 114 N. Y. Sup. 1094; State v. Dodge County, 56 Wis. 79; People v. Assessors, 40 N. Y. 154; Donahue v. Will County, 100 Ill. 94.

Appellants also contend that it would have been possible to have obtained a writ of mandamus, if the state board refused to perform its duty under the law.

*Boyce* & *Warren,* for Respondents.

When a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the constitition, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, equity may properly interfere to restrain the operation of this unconstitutional exercise of power.   Cummings v. Merchants National Bank of Toledo, 101 U. S. 153, Book 25 L. Ed. 903.

In the case of Whitbeck v. Mercantile National Bank, 127 U. S. 193, Book 32 L. Ed. 118, it was held that an increase in the assessment of bank shares of five per centum made by the State Board of Equalization for incorporated banks of Ohio was such a discrimination as is forbidden by section 5219 of the

Revised Statutes of the United States, where the taxes on other moneyed capital and personal property was made upon an estimate of sixty per cent. of its actual value and the estimate of such stock was also made at the same per cent., but was increased by such state board to sixty-five per cent.

It may be said further that the increase made by the State Board of Equalization in this case was void because made in violation of both constitution and statute. While the constitution requires equality and uniformity in the valuation and assessment of all classes of property, the statute requires that all property shall be assessed at its full and true value in money, so that the State Board of Equalization was without any power to act upon an assessment based upon a valuation at a percentage only of the actual value of the property other than by increasing the valuation of the several classes of property to their full and true money value according to the statute, which would necessarily result in equality and uniformity.

The existence of a remedy at law does not deprive equity of jurisdiction unless such remedy be adequate. By this is meant that it must be clear, complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity; it must afford an actual and substantial protection to the precise right of the party. Equity has jurisdiction where the remedy at law would be cumbersome or inconvenient or because the equitable remedy is more convenient, speedy and economical. So the greater promptness of the remedy in equity is often given as a reason for sustaining its jurisdiction. So the remedy at law must be plain, that is it must be obvious and not doubtful or difficult. 16 Cyc. pp. 41-44; Stanley v. Board of Supervisors, 121 U. S. 535, Book 30, L. Ed. 1000; Taylor v. Louisville Etc. Co., 88 Fed. 350, 31 C. C. A. 537; Weeks v. Milwaukee, 10 Wis. 263; Hersey v. Board, 16 Wis. 192; Smith v. Smith, 19 Wis. 619.

Perhaps the latest expression of the Supreme Court of the United States on the power of equity to enjoin the collection of the illegal excess of taxes in such case is found in Raymond v. Chicago Union Traction Co., 207 U. S. 20, Book 52 L. Ed. 78,

in which it was held that assessing the franchises and other property of certain corporations at a different rate and by different method from that employed for other corporations of the same class for the same year which results in enormous disparity and discrimination, denies due process of law and equal protection of the laws given by the United States Constitution 14th amendment against impairment by a state, and that equity has jurisdiction upon payment or tender of the taxes fairly and equitably due, to restrain the collection of the excess. We also cite: Citizens National Bank v. Board of Commissioners, 111 Pac. 421. by the Supreme Court of Kansas; Salt Co. v Ellsworth County, 82 Kan. 203. The cases cited by the learned state's attorney upon the subject of classification for purposes of taxation refer to occupation, license and other similar taxes imposed under the police power of the state, and not to property taxes under such constitutional provision as exists in this state. The decision of this court in Bagley Elevator Co. v. Butler, 123 N. W. 866, is not in any manner in conflict with the foregoing authorities.

Injunction is the only proper remedy in cases of this character. No other form of remedy can reach the precise question, and certainly the issues tendered by the complaint in this case could not have been tried, either upon a writ of certiorari or a writ of mandamus directed to the state board of equalization. There would be nothing in the record of the state board of equalization brought up by a writ of certiorari upon which the court could grant any relief, as the issues depend altogether upon matters outside of the records of that board, and upon the ability of plaintiffs to prove the facts alleged in the complaint had not they been admitted by the demurrer. Taylor v. Louisville, Etc. R. Co. 88 Fed. 350, 31 C. C. A. 537. In Cox v. Hawkins, 64 N. E. 1093, it was held that the remedy in equity is the appropriate remedy in such cases. See also the following authorities in addition to the cases already cited: Chicago Etc. R. Co. v. Board of Commissioners, 39 Pac. 1039; Oregon & C. R. Co. v. Jackson County. 64 Pac. 307, 310; Andrews v. King County, 23 Pac. 409; Board of Supervisors v. Chicago, B. & Q. R. Co., 44 Ill.

229; Railroad & Telephone Co. v. Board of Equalization, 85 Fed. 302, and Note 2. p. 322; Cox v. Hawkins, 64 N. E. 1093.

The law does not require a useless or vain thing, and it must be apparent to any one that under the admitted facts of this case the respondents could not have accomplished anything by application to the local boards of equalization. The state board not only refused to increase the valuation of property from the percentages shown by the returns before them to the true value of such property throughout the state, but absolutely refused to make any equalization as between bank stock and other classes of property. We believe, however, that it was not necessary for the plaintiffs in this case to take any of these steps because under the well settled rule as evidenced by the authorities hereinbefore cited, they were entitled to an injunction because the tax was levied in accordance with an unconstitutional and unequal standard of valuation by preconcerted action of the officers charged by law with the assessment and equalization of taxes.

WHITING, J. This action was brought to restrain the collection of a tax assessed and levied against the plaintiffs. The defendants demurred to the complaint, the demurrer was overruled, and defendants have appealed to this court, assigning as error the overruling of such demurrer.

The questions presented upon this appeal are of unusual importance. Preliminary to a discussion of the facts confessed by the demurrer, it is well to briefly note the laws of this state and the well-known customs that had grown up thereunder at the times mentioned in the complaint. The constitution of this state, so far as it relates to property taxation, provides (section 2 of article 11): "All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as may be prescribed by the Legislature by general law, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. And the Legislature shall provide by general law for the assessing and levying of

taxes on individual property." It is also provided (section 4 of article 11) that "* * * all property employed in banking shall always be subject to a taxation equal to that imposed on the property of individuals." The Legislature enacted a most comprehensive code of laws covering the subject of assessment and taxation, and, by such Code, provided for assessment officers and boards with quasi judicial powers thus creating what theoretically would appear to be an efficient tribunal with adequate powers for the carrying out of the purposes of the constitutional provisions. A reading of our statutes cannot but impress one with the importance given therein to the office of assessor, upon whose shoulders primarily rests the duty of valuing each item of property and establishing uniformity and equality between persons, between items of property, and between classes of property. The law provides—evidently for the convenience of the several boards of equalization—that the assessor in making his return shall divide property into some 28 classes, and specifically provides (section 2076, Pol. Code) that: It shall be the duty of the assessor to determine and fix the true and full value of all items of personal property included in such statement (return). * * *." Section 2085 of the Pol. Code provides: "All property shall be assessed at is true and full value in money. In determining the true and full value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which said property would sell at auction or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself and at such a sum or price as he believes the same to be fairly worth in money." Section 2088 of such Code requires every assessor, before he commences his work, to take an oath, swearing, among other things, to support the constitution of this state, and that: "I will faithfully, impartially and honestly discharge the duties of my office as assessor, particularly that I will assess all property assessed by me at its true cash value according to my best knowledge and judgment * * *." So far as real property is concerned, it is provided (section 2089

of said Code) that the assessor "shall actually view, when practicable, and determine the true and full value of each tract or lot of real property listed for taxation, and shall enter the value thereof. * * *." There is provided a local board of equalization for each township, town, city, or other assessment district, of which board the assessor is a member, which board has power to place upon the assessment list, "with the true value thereof," any property omitted by the assessor, and also "to correct the assessment so that each tract or lot of real property and each article, parcel or class of personal property shall be entered upon the assessment list at the true value thereof." Section 2098, Pol. Code. Only to the assessor and the local board of equalization is given, save in certain exceptional cases where the county board of equalizaton can act, the power to fix the relative values of items within any one of the classes named in the statute. The assessments, after equalization by the several local boards, are returned to the county board. The chief work of the county board is—where, through difference in the judgments of local assessment officers, an inequality appears in the valuation placed upon the same classes of property within the several assessment districts—"to equalize the same so that each tract or lot of real property and each article or class of personal property shall be entered on the assessment list at its true and full value;" but the statute to prevent the danger of too low an assessment requires, except in a few cases, that such corrections shall be upwards. Each county auditor sends, for review by the state board of equalization, an abstract of assessment as equalized by his county board. The state board should then equalize the returns from the several counties, "so that the taxable property of the several counties shall be assessed at its proportionate value," which equalizaton can be made by the lowering of the total valuation of a class in the one county or the raising of the same in the other, or both, or by raising or lowering the total valuation of a class throughout the state, provided however the aggregate valuation of all property returned to them by the auditors cannot be raised to exceed $3,000,000. Sections 2110, 2111, Pol. Code. It will thus be seen that the state board is given power to equalize valuation both

as between counties and as between classes. The several county auditors are advised of any action on the part of the state board affecting property within their counties, and it is their duty to conform to the action of the state board.

In spite of such plain and mandatory provisions of the law, designed for effecting a true and full valuation of each item of property assessed and thus bringing the uniformity and equality guaranteed by the constitution, a general custom became established, under which every item within the several classes of property was almost invariably assessed at some one fixed arbitrary price regardless of the real value thereof. There also became established the custom of assessing all property at a small fraction of its true value. This latter was accomplished by arbitrarily fixing a certain per cent. of the true value at which property should be assessed, such per cent. often being different for the different classes. Then chapter 42, Laws 1905, was enacted. It provides for a meeting to be held each year by the state board of equalization and the several county auditors for counsel and conference with reference to the duties of the assessors and methods for making assessments, and "particularly with reference to securing uniform rates of assessment of property for taxation, and obtaining assessment of all property in the state subject to taxation;" such statute providing that "it shall be the duty of each county auditor at the annual conference of the assessors with the county commissioners and county auditor, * * * to instruct and direct such assessors in the performance of their duties fully and explicitly in accordance with the laws of this state and the instructions given and imparted to them by said state board of assessment and equalization." In the closing section of such statute it is declared that "the present methods of assessments have resulted in gross inequalities and the omission of property from assessment and taxation, and it being essential that the next assessment shall be properly and uniformly made * * *."

Such were the laws and customs existing when there was presented to this court the case of Bagley Elev. Co. v. Butler, etc., 24 S. D. 429, 123 N. W. 866, a case somewhat analogous to this. In our decision therein we said: "This court will take

judicial notice that the taxing officers of this state, from the assessars to the state board of equalization, absolutely disregard the clear mandate of the law in placing values upon property for taxation purposes, but that is no reason why the courts of this state should connive at such acts or become active parties thereto."

It is confessed by the demurrer herein that the state board of equalization in March, 1910, held, with the several county auditors, the meeting provided for by the Law of 1905, supra; and apparently set its seal of approval upon the practices theretofore prevailing by deliberately and intentionally entering upon a scheme for the assessment of property within this state, absolutely in conflict with the constitutional and statutory provisions we have referred to. It appears that the state board, after counseling with the auditors from nearly every county in the state, sent forth its recommendation as to the value to be used as basis for the assessment of each class of property wherein the fixing of an arbitrary basis was possible; for example, the value of horses three years old and over was fixed at $35 each, and of wagons and carriages at $14 each, with proportionate values placed upon the items of the remaining classes. A list of the counties was given with a valuation per acre of the land in each. It is confessed that the value as so arbitrarily fixed was not to exceed one-third of the true values in each class. All other property, except bank stock, was directed to be assessed at "one-third of its actual value," and bank stock at "40 per cent. of its value." The value of such stock is to be determined "by adding to the capital stock the surplus and net undivided profits," and then deducting the assessed value of the land. To follow the recommendations sent out the assessor must disregard the method of determining the value of bank stock as prescribed by section 2081, Pol. Code. How to figure the value of bank stock was illustrated in such recommendations, by the following: "(Example) Capital stock, $50,000.00. Surplus, $20,000.00. Net undivided profits, $10,-000.00. Value of real estate carried by bank, $25,00.00; assessed valuation of which is $8,330.00. (Solution) $50,000.00 plus $20,000.00 plus $10,000.00 equal $80,000.00; 40 per cent. of $80,000.00 equal $32,000.00; $32,000.00 minus $8,330.00 equal

$23,670.00 assessment value of bank stock." It will be seen that $23,670 is over 43 per cent. of $55,000 the estimated full value of the stock less the value of the land.

The demurrer also confesses that plaintiff corporations are banks located at Sioux Falls, S. D., and the other plaintiffs stockholders in such banks; that in the spring of 1910, after the state board had held its meeting, and sent forth, through the several auditors, to the assessors, the message above referred to, the local assessor at Sioux Falls was assessing property in accordance with such instructions received from the state board, and threatened and was about to assess the bank stock of plaintiff corporations at 40 per cent. of its true value, when plaintiffs procured an alternative writ of mandamus from the circuit court requiring him to assess bank stock at a value which would be equal and in proportion to valuations placed upon articles belonging to other classes of property, and commanding that he assess all property in the city of Sioux Falls at its true value, or show cause why he do not do so; that the above proceeding is still pending, but that said assessor did 'proceed to assess all property, other than bank stock, at less than one-third of its true value and bank stock at one-third of its value; that the other assessors of Minnehaha county assessed property as did the one in Sioux Falls, except that they assessed bank stock at 40 per cent. of its value; that the county board equalized such assessment by reducing all bank stock assessments to one-third value, but still leaving bank stock assessed higher than other property; that, when the state board met and was threatening and about to raise the assessment of bank stock in Minnehaha county to 40 per cent. of its true value, these plaintiffs appeared before such board, and filed objections thereto, and petitioned it to equalize the assessment of bank stock and other property throughout the state by increasing the assessment upon all classes of property real and personal within the state to its true value in money, which objections were overruled and petition denied; that such state board increased the assessment of bank stock as made in Minnehaha county from 33 per cent. to more than 40 per cent., and refused to equalize

the assessments as between bank stock and other classes of property; that the action of such state board was certified to the county auditor of Minnehaha county, who, at the time of the commencement of this action, was threatening and about to raise the assessment of bank stock from one-third to 40 per cent. of its value; that the circuit court, upon application of plaintiffs, issued an order to such county auditor to show cause why he should not be enjoined; that upon hearing such order to show cause the said court refused the restraining order, but granted leave to plaintiff to bring in the county treasurer as a party to this action; that the county auditor did increase the assessment in accordance with direction of said state board; that the auditor has delivered to the county treasurer the duplicate tax list; that, unless restrained, the treasurer will enforce the collection of said taxes, thus causing a multiplicity of suits to recover same, and such assessment will become a cloud upon the title to property owned by plaintiffs and an apparent lien thereon; that plaintiffs have tenederd to the county treasurer of Minnehaha county the full amount of tax which they are required to pay at the rate of levy for the said year 1910 upon the assessment as equalized by the county board, but which is much less than the amount required upon the assessment as equalized by the state board, which tender was refused; that plaintiffs are ready to pay, at any time, the sum so tendered and bring the same into court; that any efforts of plaintiffs to secure an assessment on property of other taxpayers in Sioux Falls, the county of Minnehaha, or any taxing district within the state, or throughout the state, at the true and full value of the property, would have been useless and unavailing; that the assessment of bank stock and other classes of property as made was a part of a premeditated and deliberate plan and scheme of assessment, whereby the bank stock of plaintiffs was to be assessed at 40 per cent. of its real and true value, and real property and other classes of personal property at less than one-third their real and true values; that all the taxing officers and members of boards of equalization throughout the state of South Dakota were committed, through the action of said state board, to the carrying out of said plan of assessment of property at its full

and true value, and it would have been useless to have appeared before any of such boards for the purpose of securing any increase in the assessment of property to its full and true value. Plaintiffs prayed that the increase as made by the state board and the extension of same upon the tax list and duplicate be canceled and vacated, that the defendant treasurer be perpetually enjoined and restrained from the collection of such illegal increase, and plaintiffs be adjudged to pay the amount tendered.

Three questions are presented to us by the foregoing: (1) What, if any, legal right of respondents was infringed by the taxing powers? (2) Which particular board or officer committed the wrong, if any, suffered by respondents? (3) Have respondents. sought the proper remedy?

[1] Whether or not it is right and just for certain classes of property, persons, corporations, or industrial occupations to bear a greater portion of the governmental burdens than shall be borne by other classes of property, persons, corporations, or occupations is not before us for consideration, but is a matter to be left to the people for their determination. So far as they have spoken, they have declared for equality in the burden of taxation, not only as between classes of property, but as between items within classes and regardless of who may be the owners of same. The constitution recognizes no classes of property, but leaves with the Legislature to provide "rules of appraisement and assessment" for the carrying out of the constitutional provision for uniformity, equality, and proportion in taxation. It does not follow that the "rules" established must be such as will necessarily result in absolute uniformity, equality, and proportion, though any lack of equality or proportion in assessment must of necessity work a hardship or wrong to some taxpayer. If it were possible for all human minds to work alike, and if, under similar circumstances, they would always reach the same conclusions and such conclusions in every case be absolutely correct, there would be no trouble in reaching that ideal toward which all laws should lead—justice and equality among all; but we must recognize that absolute equality in taxation, while a thing to be desired, is not to be hoped for, much less expected. As was

said by Justice Miller in State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663, "perfect equality and perfect uniformity of taxation as regards individuals or corporations or the different classes of property subject to taxation is a dream unrealized;" or, as was well stated in People ex rel. v. Henderson, 12 Colo. 569, 21 Pac. 144: "Exact uniformity and mathematical accuracy in valuations are absolutely impossible. Nothing that can be devised by human reason will secure such exactness or accuracy. * * * And, if the constitutional requirement as to equality and uniformity of taxation imperatively commanded absolute exactness, in the language of Judge Cooley, 'the operations of the government must come to a stop.'   Cooley, Tax'n, 124."

[2] It is therefore universally held that for a merely excessive, unequal, or disproportionate assessment, where no principle of law is intentionally violated in making it, and the complaint is really only that of an error of judgment on the part of the assessment officers, the sole remedy for the wrong suffered is through an application for an abatement, addressed to the assessor or to the boards established by statute for the equalizing of assessments. The statutory officers and boards form a tribunal whose decisions are final except where they act without jurisdiction, or when they are guilty of what constitutes fraud in fact or in law.   Courts cannot give aid in such cases unless specially authorized by statute to do so.   Cooley on Taxation (2d Ed.) 748; Ex parte Smith & C. Bridge Co., 62 Ark. 461, 36 S. W. 1060; Citizens' Nat. Bk. v. Bd. of Com'rs, 83 Kan. 376, 111 Pac. 496; O. & C. R. R. Co. v. Jackson County, 38 Or. 589, 64 Pac. 307, 65 Pac. 369; Braun v. City of Green Bay, 55 Wis. 113, 12 N. W. 463; Andrews v. Kings County, 1 Wash. 46, 23 Pac. 409, 22 Am. St. Rep. 136; Wagoner v. Loomis, 37 Ohio St. 571; McCurdy v. Pugh, 59 Ohio, 465, 55 N. E. 154; Taylor v. Louisville & N. R. Co., 88 Fed. 350, 31 C. C. A. 537.

[3] But, whenever the tribunal to which the law has committed the valuation of property for taxation purposes, either exceeds its jurisdiction by following some plan or method forbidden by statute, or through a willful intent or desire to oppress some class of taxpayers, designedly makes an unequal and dispropor-

tional valuation, or enters into a conspiracy or collusion to disregard some clear mandate of the law, and, as a result of such action upon the part of such tribunal, an injustice is inflicted upon a class or classes of taxpayers, or even upon an individual taxpayer, the courts will extend such relief as may be best fitted to correct the wrong.   In Citizens' Nat. Bank v. Bd. of Com'rs, supra, the court said:  "The action of the officers in assessing one class of personal property at 40 per cent., another at 30 per cent., and real estate at 25 per cent. of its cash value was the result of deliberation and intention, and was so arbitrary and capricious as to constitute fraud on the rights of plaintiffs."   A leading case, and one entitled to much weight owing to the court from which it comes, is that of Cummings v. Nat. Bk., 101 U. S. 157, 25 L. Ed. 903.   In this case it was said:  "Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power."   It is confessed by the demurrer that the taxing boards and officers of this state entered into a scheme or plan for the purpose of imposing upon the bank stock of the state an unjust share of the public burden; that such plan was carried out by the willful act, upon the part of the state board of equalization, in deliberately and intentionally equalizing the valuation of bank stock at 40 per cent. of its true value while intentionally equalizing the valuation of all other property at not to exceed 33 1-3 per cent. of its true value. If the facts were as confessed, it is clear that a legal right of respondents was infringed.

[4] By whom was the wrong committed?  This becomes material in considering the question of the remedy which respondents should have sought.   While respondents claim that a large share of the property was assessed at less than one-third of its value, and while they complain of the action of the assessor and city board of equalization, they concede that the county board

equalized the assessment as returned to it, and left their property assessed at one-third of its value. They do not complain of this valuation or object to paying a tax based upon such valuation; on the other hand, they plead that they have offered to pay same, and they bring into court the money to pay the amount they would have to pay on such valuation. It becomes unnecessary, then, to consider the action of any officer or board except the state board, as it is the action of such board alone that in fact has wronged respondents.

[5-6] What remedy should appellants have pursued? If granted the relief prayed for, there will be the same disproportion in sharing the public burden as between respondents and all of the other holders of bank stock within the state as would exist between respondents and the owners of other property than bank stock in case the relief is denied. It must be remembered that those who pay on a one-third valuation are enjoying a privilege that is as unjust as is the wrong suffered by those who pay on a greater valuation. To grant respondents' prayer would be an attempt to right one wrong by committing another—the relieving of respondents from a share of the public burden which by right they should bear. The one right to which respondents were entitled was that of having the valuations of all property so equalized that the valuations would be uniform and proportionate as between the different classes of property. How might respondents have enforced such right and thus have brought about that uniformity and equality to which they were entitled? Appellants contend that respondents should have sought relief by asking the proper court, either through mandamus or certiorari, to control the action of the state board and compel it to equalize valuations by raising the valuation of all property to its true value. Appellants further contend that this court virtually so held in Bagley Elv. Co. v. Butler, supra. They have certainly misconstrued the effect of such decision. In that case this court said: "When a party whose property, though assessed at less than its true value, is assessed much higher than that of other taxpayers, shall have requested the several boards to equalize taxes in the manner fixed by statute, to-wit, by rising the assessment of all property to its,

actual value, and such boards shall have refused or failed to do their clear duty under the law, then and only then let such party apply to the courts for relief." We simply laid down a rule as to what was the duty of a party before applying to the courts for relief, and held that the plaintiff in that case had not fully performed such duty, but in no manner intimated as to what relief should then be sought. Respondents on their part claim that they fully complied with the views of this court as expressed in the above quotation, in that they asked the several boards, including the state board, to equalize the assessments by raising the assessed valuations of all property to the true value thereof.

It is a well-established rule of legal interpretation that the holdings of courts should be read in the light of the facts before the court for consideration. In the Butler Case the only boards whose actions or failures to act were before us were the local city and county boards. It is the duty of both of these boards, as hereinbefore noted, the one to raise the values of all items to the true value when same have been returned by the assessor at less than such true value, the other to so equalize values that all property "shall be entered on the assessment list at its true and full value." It follows that, when one asks either of these boards to equalize values, his prayer should be that the board seek to fix the full and true value of the property.

But when respondents sought to have the state board equalize values by raising the assessed values of all property, as returned, to the full and true value thereof, they were asking such board to do something which they must have known it could not legally do. The respondents must have known, and this court will take judicial notice, that to raise the valuation of all the assessed property of this state from 33 1-3 or 40 per cent. to 100 per cent. thereof would increase the total assessed valuation of such property many times the $3,000,000 limitation fixed by statute. Let us remember that the Constitution does not require a full valuation, but does guarantee equality. The statutory provisions looking to a full valuation must give way to the provision directly limiting the state board in its power to raise values. It was clearly the duty of respondents, under the holding of this court in the Butler

Case, to have merely asked such state board to equalize valuations, leaving to it to choose the rule or rules by which it would accomplish such result.

[7] Respondents insist that any appeal to the state board would have been useless, and that this appears clearly from the facts confessed herein. It can hardly be presumed, even from the action of such board at the time of its meeting with the county auditors, that such board, if asked to do what would have been its duty under the law, would have refused to comply with such request. But if such board, believing it had the right to equalize the assessments by leaving bank stock assessed at a greater per cent. of its value than other property, refused to do its duty, its record would undoubtedly have shown the fact that it had exceeded its jurisdiction in manner of making its equalization and had intentionally used the 33 1-3 per cent. as the basis for the valuation of all property except bank stock and 40 per cent. as the basis for valuation of bank stock. Its action could then have been reviewed by a proper court upon a writ of certiorari. This court in the case of State v. State Board, 3 S. D. 338, 53 N. W. 192, announced the established rule as laid down by Judge Cooley at page 758 of his work on Taxation: "When the assessment is erroneous in point of law, either because the assessors have adopted some inadmissible basis in making it, or because they have disregarded any of the mandatory provisions of the statute on which parties assessed have the right to rely, certiorari will lie to correct the proceedings." If respondents had asked the state board to do what was its duty under the law and such board had complied, exact justice would have been done all. If such board had refused to perform its duty, proceedings in certiorari would then have brought such exact justice.

[8] We do not wish to be understood as holding that a case cannot arise wherein the courts would be justified in restraining the collection of a tax owing to unequal and disproportionate assessment, but we do hold that such relief should only be granted as a last resort, and where no better remedy was or had been available, and not when the granting of such relief will result in injustice, an injustice which, though perhaps less in degree, is identical in kind with that sought to be remedied.

The judgment of the trial court is reversed.