# Richmond.

## MARY ELIZABETH JONES v. BETSEY M. BROWN, ET ALS.

September 27, 1928.

The opinion states the case.

*Christian & Lamb*, for the appellant.

*Cutchins & Cutchins* and *Robert H. Talley*, for the appellee.

CHINN, J., delivered the opinion of the court.

Isabella Mason, an aged colored woman, died in the city of Richmond May 2, 1924, leaving a holograph will dated November 6, 1890, and admitted to probate in the Chancery Court of said city on June 12, 1924.

Said will reads as follows:

"I, Isabella Mason, in the presence of Almighty God, of sound mind and in good health, do hereby write this my last will and testament. I hereby appoint Frank T. Sutton to administer on my estate, and request the court not to require bond of him.

"1. I want him to pay all my debts promptly.

"2. I request that all of my household furniture including my music box be sold at public auction, the proceeds of such sale, together with what money I may be possessed of, divided equally between my sisters Lucinda Pollard, Mary Elizabeth Mason, Betsey M. Brown and my neice Mary Elizabeth Jones.

"3. My diamond ear rings I give to Mrs. Bettie M. Abbott.

"4. My watch I give to my little nephew George W. Brown.

"5. My watch chain and Rhine stone jewelry I give to my sister Mary Elizabeth Mason.

"6. I give my Breast pine with the picture of my Mother and Ruby Ring to my nice Mary Elizabeth Jones.

"7. the rest of my jewelry I give to my neices Belle and Florence Pollard.

"8. I give to my neice Mary Elizabeth Jones house known as No. 620 North third street in the city of Richmond, Virginia, in trust, should she die without children this property I direct to be sold and the proceeds divided equally between my sisters Lucinda Pollard, Mary Elizabeth Mason and Betsey M. Brown.

"9. I desire house know as 618 north third street in the city of Richmond, Virginia, sold and divided equally betwen my sisters herein before mentioned.

"10. Should any one of my sisters die before my estate is settled, I wish it divided equally between those who may be alive at that time.

"I have no witness to this, but respectfully refer the court to the teller of the bank, known as the city bank, situated in the city of Richmond, to my signature being genuine, and I pray the court will admit it and *oblidge*

"ISABELLA MASON."

The testatrix never married and left no issue. At the time of the making of the will she had two brothers and three sisters. The two brothers, neither of whom is mentioned in the will, died before the testatrix; one leaving no issue, and the other leaving one child, Mary Elizabeth Jones, the appellant here.

Two of the three sisters also predeceased the testatrix; one leaving no issue, the other leaving several children. The third and only surviving sister is one of the appellees, Betsey M. Brown.

In March, 1925, said Betsey M. Brown filed her bill in this case in which, after stating the foregoing facts, she alleges that after making said will, to-wit, on January 1, 1904, the testatrix sold the two houses designated therein as 618 and 620 north Third street, and purchased another house located at 314 W. Leigh street, of which she was seized and possessed at the time of her death; that the devises of the houses at 618 and 620 north Third street were adeemed by the sale thereof; and that said Betsey M. Brown, as the sole surviving sister of the testatrix, and by virtue of the tenth clause of said will, is entitled to the property at 314 W. Leigh street, all specific legacies which had lapsed, and all other property owned by the testatrix not specifically devised and bequeathed by said will.

Mary Elizabeth Jones, the appellant, filed an answer, admitting the facts above stated, but denying that Betsey M. Brown, the surviving sister of the testatrix,

is entitled under the will to the Leigh street house and lot, and claiming that testatrix died intestate as to said property.

The cause was duly heard upon the pleadings and depositions, when, after passing upon other questions involved, it was held by the court in its decree that the tenth item of the will should be construed "to be a residuary clause and under it Betsey M. Brown, the sole surviving sister of the testatrix, will take in fee simple all the real property of which the testatrix died seized and possessed, particularly the dwelling and lot known as No. 314 west Leigh street, Richmond, Virginia."

The only question presented by appellant's petition for the consideration of this court is whether the Leigh street house and lot, which constitutes all the real estate owned by the testatrix at the time of her death, passes to Betsey M. Brown by virtue of the tenth item of the will, or whether the testatrix died intestate as to said property and it devolves to her heirs at law under the statute of descents.

It is said in the petition for appeal that in construing the last item of the will as a residuary clause, the decision of the learned chancellor of the lower court was based to a large extent upon the presumption against intestacy which obtains when the language of a will leaves it doubtful whether the testator intended to dispose of his whole estate.

■ It is true that the courts are decidedly averse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so. For the fact of making a will raises a very strong presumption against an expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will.

*McCabe* v. *Cary*, 135 Va. 428, 116 S. E. 485; *Neblett* v. *Smith*, 142 Va. 840, 128 S. E. 247; *Gallagher* v. *Rowan's Admr., et als.* 86 Va. 823, 11 S. E. 121.

In *Tebbs* v. *Duval*, 17 Gratt. (58 Va.) 349, 361, the court said:

"Where the will affords no satisfactory clue to the intention of the testator, the court must, from the necessity of the case, resort to legal presumptions and rules of construction. But such rules yield to the intention of the testator apparent in the will, and have no application where the intention thus appears." See also *Moon* v. *Stone*, 19 Gratt. (60 Va.) 130; *Withers* v. *Sims*, 80 Va. 651; *Hurt* v. *Brooks*, 89 Va. 496, 16 S. E. 358.

Hence: "The presumption against intestacy will not prevail when the language of the will fairly construed is insufficient to carry the whole estate. The presumption does not require the court to make a new will, nor to include in it property not comprehended by its terms." 28 R. C. L. page 228.

In other words, the presumed intent cannot obtain against the actual intent, when the same can be ascertained from the language of the will considered in the light of the extrinsic circumstances surrounding the testator at the time; for the real intent is, after all, the polar star by which the expositor is to be guided in the interpretation of all wills. As said in *Penick's Executor* v. *Walker*, 125 Va. 274, 99 S. E. 559: "The primary consideration and rule of construction is to determine the intention of the testator from the language which he has used. If the meaning of his language is plain, the will must be given effect accordingly. This rule is familiar and elementary, and to it all others are subordinate and subservient. If there be doubt as to the meaning, then the auxiliary or

subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself as nearly as possible in the situation of the testator at the time of the execution of the will."

The inquiry is, therefore, what the testatrix meant by the language she used in the tenth clause of her will. It is urged that the testatrix intended that all of her estate which was not disposed of by the will should go to her three sisters, or the survivor, or survivors of them; in other words that the language used should be construed as a general residuary devise of all her property with the exception of the specific devises and bequests therein before mentioned, and therefore carried with it the real estate she afterwards acquired.

While at first impression there may seem considerable plausibility and force in this contention when the clause is taken by itself, we do not think it bears this construction when it is read in connection with the other provisions of the will and in the light of the extraneous evidence.

██ Looking at the language of the clause in question, it should first be noted that it is not on its face a residuary clause either in form or content. It does not contain the words "rest," "residue," "remainder," or any word of like import. In fact it does not *in terms* give or devise anything. While no particular form of words is necessary to constitute a residuary devise or bequest, it is a well settled rule of construction that in order to take away the title of the heirs at law, the intention of the testator to dispose of his estate must be manifested with legal certainty by express words or necessary implication: "For conjecture cannot be made to supply what the testator has failed to sufficiently indicate on the face of the will." *Sutherland* v. *Sydnor*, 84 Va. 880, 6 S. E. 480; *Senger* v.

*Senger's Ex'r*, 81 Va. 687; *Hatcher* v. *Hatcher*, 80 Va. 169; *Wootton* v. *Reed's Ex'r*, 12 Gratt. (53 Va.) 196; *Neblett* v. *Smith*, 142 Va. 840, 128 S. E. 247; *McCabe* v. *Cary's Ex'r*, 135 Va. 428, 116 S. E. 485. And "necessary implication" means "so strong a probability of intention, that an intention contrary to that which is imputed to the testator cannot be supposed." *Sutherland* v. *Sydnor*, 84 Va. 880, 6 S. E. 480; *Boisseau* v. *Aldridges*, 5 Leigh (32 Va.), 223, 27 Am. Dec. 590; 28 R. C. L. pages 209–10.

██ It is conceded in the case before us that all the property owned by the testatrix at the time the will was executed was specifically disposed of under the first nine items of her will. It is evident from the precision and detail with which the will is drawn that the testatrix knew this, and when she added the tenth clause to the instrument could not have had in mind the disposition of any *residium* of the property she then owned. To say that she was then looking forward to the acquisition of other property and intended to include it in her will when there is nothing on the face of the will itself or in the extrinsic circumstances to indicate such a thought or purpose on the part of the testatrix, would be pure conjecture. Furthermore, the operation of this clause is, by its express terms, conditional upon the prior death of one or more of the three sisters of the testatrix. If, therefore, it had chanced that none of the sisters had predeceased her this clause would have no effect at all. It seems perfectly obvious that if the testatrix had intended this provision as a residuary devise for the benefit of her sisters, she would not made it conditional upon the death of one or more of them, with the result that none of them would take and she would die intestate as to the property if all of them remained alive. When

viewed in this light, the language of the tenth clause of the will does not, in our opinion, either expressly or by necessary implication, manifest with legal certainty an intention on the part of the testatrix to make a residuary disposition of her estate. This being the case, as all parts of the will must be given effect, if possible, it seems encumbent upon us to determine what the testatrix did mean.

It is argued on the one hand that the pronoun "it" as used in this clause refers to the preceding noun "estate," and that the expression, "should any one of my sisters die before my estate is settled I wish *it* divided equally between my sisters," etc., implies a gift or devise in favor of the sisters of all the property which the testatrix owned at the time of her death not otherwise disposed of, and it is insisted in behalf of the appellant, on the other hand, that "it" refers only to the proceeds of the house devised under the immediately preceding clause. We do not think either construction accords with the real intent.

As said by Professor Graves, in his valuable and much quoted paper on the subject:

"What the judicial expositor seeks to ascertain in the interpretation of doubtful expressions in a will, is not the meaning of the words alone, nor the meaning of the writer alone, but the meaning of the words as used by the writer. It is not the meaning of the words in the abstract, for the meaning of the words varies with the circumstances under which they are used; and not the meaning of the writer apart from his words, for the question is one of interpretation, and what the writer meant to have said, but did not, is foreign to the inquiry; * * * * We must seek the meaning of the writer, but must find it in his words; and we must seek the meaning of the words, but it must be the

meaning of his words—of the words as he has used them—the meaning which they have 'in the mouth of this party, *   *.' "

With the exception of the tenth clause, the language of the will is clear. In the opening paragraph testatrix appoints Frank T. Sutton to "administer on my estate." In the second clause she directed her household furniture to be sold and the proceeds, together with what money she might have at her death, to be "divided equally" between her three sisters and her neice, Mary Elizabeth Jones. In the third, fourth, fifth and sixth clauses she made specific bequests of certain trinkets, and in the seventh clause disposes of "the rest of my jewelry." In the eighth clause she devised one of her houses to Mary Elizabeth Jones, upon the limitation that should she die without children said house should be sold and the proceeds "divided equally between" her three sisters. And in the ninth clause she directed her other house to be sold and the proceeds "divided equally between" them.

Having thus disposed of all she owned and possessed (as the evidence shows), it is evident from the language used, that it then occurred to the testatrix that one or more of her sisters might die before her will took effect and the property therein devised and bequeathed for their benefit could be sold, and her estate settled according to her directions; and that, with this thought in her mind, she added the tenth clause to her will to provide for such contingency by retaining survivorship among her sisters with respect to what she had left them by the will. That this was the dominant and sole purpose of this clause seems beyond question. Figuratively placing ourselves in the situation of the testator at the time, and reading the whole clause together, it also seems apparent that the words "be-

fore my estate is settled" were meant primarily to denote the time at which, and the event upon which, the survivorship should take effect; and, as herein before stated, the word "estate" was intended to refer to the property or estate which she had already disposed of in her will—nothing more and nothing less. Since the only purpose of this clause was to retain survivorship among the sisters, and it is neither expressly nor impliedly limited to any particular bequest, it necessarily follows that such survivorship must have been intended to apply to *all* she had left them under the prior clauses of the will. Turning back to these clauses we find that the provisions made for the sisters consist of three separate bequests of money to be divided between them in equal shares. Taking this into consideration, along with the purpose of the clause and the language used therein, we think it is clear that the word "it," as used by the testatrix, was intended to refer to the *share* which "any one" of the sisters so dying would have been entitled to under the will if she had remained alive until the estate was settled.

"It" cannot be construed as referring to "estate," as contended, without making this clause entirely repugnant to the express testamentary dispositions contained in the other clauses of the will; nor should "it" be interpreted as referring to the ninth clause only, because that interpretation would be inconsistent with the manifest purpose of the testatrix that all the bequests made for her sisters should be regarded and treated alike in every particular. If the testatrix had intended that the surviving sister or sisters should only take the property bequeathed under the ninth clause, she could have easily said so. On the other hand the tenth clause is separately numbered and placed in a

separate paragraph; indicating that it was intended to constitute a distinct but integral part of the whole instrument. ·

As the result of these conclusions, the tenth clause of the will, when the words employed therein are interpreted in the sense in which they were used by the testatrix, should be construed to read as follows:

"Should any one of my sisters die before my estate (herein disposed of) is settled, I wish it (her share of said estate) divided equally between those who may be alive at that time."

This construction gives effect to the whole will, makes it consistent in all its parts, and to our minds is in accordance with the general scheme of the will as conceived in the mind of the testatrix, and with her intention at the time she wrote it.

The well settled rules of construction require that the will be read as a whole, and all its clauses reconciled, if fairly possible to do so, in view of the language used; for it is the duty of the court to give effect to every part of the instrument, provided some effect can be given not inconsistent with the general intent· as gathered from the whole will. · *Wornom* v. *Hampton Normal, etc. Inst.*, 144 Va. 533, 132 S. E. 344; *Mears* v. *Taylor*, 142 Va. 824, 128 S. E. 264; *Hooe* v. *Hooe*, 13 Gratt. (54 Va.) 245; *Wootton* v. *Redd*, 12 Gratt. (53 Va.) 196; *Funkhouser* v. *Spahr*, 102 Va. 306, 46 S. E. 378.

In *Waters* v. *Trefouret*, 117 Va. 186, 83 S. E. 1078, the court quoted from the case of *Covenhoven* v. *Shuler*, 2 Paige (N. Y.), 122, 21 Am. Dec. 73, as follows:

"The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken

together; * * * * When the words of one part of a will are capable of a twofold construction, that should be adopted which is most consistent with the intention of the testator as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words."

"In construing wills, courts are never bound to give a strict and literal interpretation to the words used, and by adhering to the latter, defeat the manifest object and design." *Hill* v. *Houston's Ex'r*, 15 Gratt. (56 Va.) 350.

For the foregoing reasons we are of the opinion that the testatrix, Elizabeth Mason, died intestate as to the dwelling and lot known as No. 314 west Leigh street, in the bill and proceedings mentioned, and as to all other real estate of which she died seized and possessed not specifically disposed of in her will. Therefore, so much of the decree of the lower court as holds "Item (10)" of decedent's will to be a residuary clause, and that "under it Betsey M. Brown, the sole surviving sister of the testatrix, is entitled to take in fee simple all the real property of which the testatrix died seized and possessed," will be reversed, and the cause remanded to be therein proceeded with accordingly.

*Decree reversed and remanded.*