# Richmond

## Mary Sheridan, et als. v. W. Allan Perkins and George Pausch, Executors of the Will and Trustees of the Estate of William J. Rucker, Deceased, et als.

June 9, 1947.

Record No. 3196.

Present, All the Justices.

The opinion states the case.

*Edward A. Burke, Charles G. Page, Ari M. BeGole* and *Walsh, Waddell & Coles,* for the appellants.

*Abram P. Staples, Attorney General,* for Rector and Visitors of University of Virginia;

*Goodbar & Ferriss,* for St. Luke's Hospital;

*Paxson, Williams & Fife* and *John S. Graves,* for Martha Jefferson Hospital, appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the construction of the will of William J. Rucker, deceased. The specific question presented is whether an estate amounting to approximately $1,000,000, which the testator inherited from his mother, Mrs. Lucy J. Dun, and referred to in the record and briefs as the "Dun Fund," passed to the residuary legatees, St. Luke's Hospital of St. Louis, Missouri, Martha Jefferson Hospital and Sanatorium, Incorporated, of Charlottesville, Virginia, and The Rectors and Visitors of the University of Virginia, or whether the testator died intestate as to this fund with the result that it passed and descended to his next of kin.

William J. Rucker, for many years a resident of Charlottesville, Virginia, died on December 19, 1941, at the age of sixty-eight years. Although twice married, he died a widower and left no children.

Mr. Rucker was the only child of William Alexander Rucker and Lucy James Rucker. His father died in 1893. His mother married John Dun who died in 1908. Mrs. Dun was a woman of considerable wealth, derived from an interest in the mercantile agency of R. G. Dun & Company. She died testate, in Baltimore, on August 26, 1921.

Mrs. Dun and her son were devoted to each other, but the relationship terminated when Mrs. Dun became ill mentally. On May 6, 1912, she was adjudicated to be *non compos* and the Safe Deposit and Trust Company of Baltimore was appointed committee of her estate. Upon Mrs. Dun's death the Trust Company qualified as executor and trustee under her last will and testament.

During Mrs. Dun's lifetime and after her death, under the terms of her will, her son received large allowances from her estate and in this manner accumulated a fortune which, exclusive of the "Dun Fund," at the time of his death, in 1941, amounted to nearly $2,000,000.

Mr. Rucker had great confidence in the officials of the Safe Deposit and Trust Company, to whom he looked for guidance and advice in the management of his estate. Prior to 1930 he had, at various times, executed several wills prepared under the direction of the officers of the Trust Company. In 1932 Mr. W. Allan Perkins, a distinguished member of the Charlottesville Bar, became one of Mr. Rucker's legal advisers. Thereafter Mr. Perkins drew for Mr. Rucker four wills, including the one which is the subject of this litigation.

Mrs. Sallie Woods Rucker, the testator's first wife, died December 20, 1932. They were a devoted couple and he gave her every attention during her last lingering illness. On May 24, 1933, he married Miss Helen Tierney. This union was not happy and terminated the following October 5 in a separation agreement. Mrs. Helen Tierney Rucker died on May 3, 1934.

Mr. Rucker, though a man of cultured tastes and wide information, had few intimate friends. With one or two exceptions, he had little contact with his relatives, all of whom were nonresidents of Virginia.

The record furnishes convincing evidence of Mr. Rucker's interest in the three institutions which were named as residuary legatees under his will. To each of these he had made substantial contributions during his lifetime. In previously executed wills he had remembered each quite substantially.

In 1938 Mr. Rucker suffered a severe illness. Perhaps with his mother's experience in mind, he became apprehensive about his condition and determined to set up a trust for his care, support and maintenance should he become incapacitated.

On April 19, 1939, he executed a trust agreement, prepared by Mr. Perkins, under the terms of which he assigned and conveyed to George Pausch, an officer of the Safe Deposit and Trust Company of Baltimore, and W. Allan Perkins, as trustees, certain securities of the then value of $1,800,000. Under the terms of the trust the trustees were to pay to the grantor, or for his benefit, during his lifetime, the net income from these securities. Upon the grantor's death the trustees were to pay out of the fund certain specified amounts to various beneficiaries, including St. Luke's Hospital of St. Louis, Martha Jefferson Hospital and Sanatorium, and The Rector and Visitors of the University of Virginia. Under another provision these three institutions were to share equally in the residuum of the trust fund.

On the same day, April 19, 1939, Mr. Rucker executed his last will and testament, likewise prepared by Mr. Perkins, which is the subject of this litigation. The will specifically mentioned only three relatives. To one he gave an article of jewelry, and to each of the others family portraits.

There were specific devises and bequests to The Rector and Visitors of the University of Virginia, Martha Jefferson Hospital and Sanatorium, and St. Luke's Hospital, which we need not here detail.

Article "Fifth" of the will provides for the settlement of the estate, the payment of estate and inheritance taxes, and vests power of sale in the named executors, W. Allan Perkins and George Pausch. Then follows these declarations:

"(3) By a Trust Agreement of even date with this will, I have disposed of all of my intangible personal property, both during the remainder of my lifetime and after my death. Said Trust Agreement does not include within its terms my real estate, my tangible personal property, or any money I may have in my possession at the time of my death. This will is, therefore, specifically designed to provide for the distribution of said real estate, tangible personal property, and money.

"(4) I have no relatives closer in degree than first cousins;

several of these I am only slightly acquainted with; several of them have substantial means of their own. Under the will of my mother, Mrs. Lucy James Dun, which was admitted to probate in the Orphan's Court of Baltimore County, Maryland, on the 31st day of August, 1921, all of these cousins are provided for: hence, I have not felt it proper to include in this, my will, or in the Trust Agreement of even date herewith, any of my relatives other than those named, for all of whom I have a personal and affectionate regard."

Article "Sixth" is a residuary clause which reads thus:

"I direct that all the rest and residue of my estate, of every kind and description; real, personal and mixed, and wherever situated, shall be divided by my Executors hereinafter named into three equal portions, and I do hereby give, devise and bequeath one of said portions to each of the Institutions hereinafter named, the one-third of the whole of said residue of my estate to be received by each of said Institutions to be applied to such uses and purposes as such Institution may deem best, without restriction or limitation of any sort, except that the one-third portion received by the University of Virginia shall be used for its Hospital only, and for no other purpose of said University, that is to say—

"One-third of said residue to St. Luke's Hospital of St. Louis, Missouri;

"One-third of said residue to Martha Jefferson Hospital and Sanatorium, Incorporated, at Charlottesville, Virginia;

"One-third of said residue to The Rector and Visitors of the University of Virginia, at Charlottesville, Virginia, for the general use of the Hospital of the University of Virginia, and for no other purpose."

As has been said, Mrs. Lucy J. Dun, the mother of William J. Rucker, died on August 26, 1921. She left a will which was executed on April 7, 1910, and probated in the Orphan's Court of Baltimore county, Maryland, on August 31, 1921. After making some relatively small general bequests and specific legacies, the testatrix bequeathed the residue of her estate to the Safe Deposit and Trust Company of Baltimore, as trustee, to pay the net income to her son, William J.

Rucker, during his life. After the death of the testatrix's son the trustee was directed "to set apart one-third of said trust estate and pay the net income thereof to his widow during her life or widowhood," "and from and after the death or remarriage of the widow of my said son, to hold the one-third part of the trust estate, so as above set apart for her, for the benefit of the child or children of my said son * * * ; but if there should be no such children or descendants then surviving; * * * to divide, pay over and transfer the same, free of any trust, to and among the persons who would be the next of kin of my said son according to the laws of Maryland if he were living at the time of the death or remarriage of his widow."

As early as December, 1929, it had been pointed out to the officers of the Safe Deposit and Trust Company that this remainder over after the life estate to the widow of William J. Rucker might be void as violative of the rule against perpetuities. Just when this possibility had been brought to the attention of Mr. Rucker, and how seriously he regarded it, is the subject of dispute between the parties. At any rate, no steps were taken during the lifetime of Mr. Rucker to settle the question judicially.

On August 7, 1942, the Safe Deposit and Trust Company, as executor and trustee under the last will and testament of Mrs. Dun, filed a petition in the Circuit Court of Baltimore county, Maryland, praying for an interpretation of the will and a determination of the validity of the above provision.

After a protracted litigation the matter reached the highest court of Maryland, which on November 1, 1944, handed down an opinion sustaining the contention of W. Allan Perkins and George Pausch, executors of the estate of William J. Rucker, deceased, who had appeared in the proceedings, that the remainder over of one-third of the residue of Mrs. Dun's estate was void because it violated the rule against perpetuities, that she had died intestate as to this portion of her estate, and that it had passed to William J. Rucker as her sole heir and distributee. *Perkins* v. *Iglehart*, 183 Md. 520, 39 A. (2d) 672.

As a result of this decision, on March 21, 1945, the executors of William J. Rucker's estate received this one-third of Mrs. Dun's estate, which on the latter date amounted to $1,028,533.63. Upon the receipt of this "Dun Fund," William J. Rucker's executors filed suit in the Corporation Court of the city of Charlottesville, praying for the construction of his will and for the guidance of the court in the administration and distribution of his estate.

St. Luke's Hospital of St. Louis, Martha Jefferson Hospital and Sanatorium, and The Rector and Visitors of the University of Virginia, who were made parties defendant, contended that the "Dun Fund" passed to them under the residuary clause of William J. Rucker's will.

William J. Rucker's next of kin and distributees, as fixed by the Virginia statute of distribution (Code, sec. 5273, as amended), contended that the will was not framed and designed to dispose of the "Dun Fund," that the testator had died intestate as to such portion of his estate, and that hence it had passed to them.

After voluminous depositions had been taken on both sides the lower court entered a decree, holding that the "Dun Fund" passed under the residuary clause, and from this decree the testator's next of kin have appealed.

While the surrounding circumstances are unusual, the case presents no novel legal problems. It turns on familiar principles. Reduced to simple terms, our object is to determine the testator's intent.

The appellants concede that there is a "strong presumption against partial intestacy," especially where the will contains a comprehensive residuary clause. *Neblett* v. *Smith*, 142 Va. 840, 847, 128 S. E. 247, and authorities there cited. They also concede the broad scope of the residuary clause, and that if applicable it disposed of property determined, after the execution of the will, to have been previously inherited by the testator.

They rely upon the principle exemplified in *Blankenbaker* v. *Early*, 132 Va. 408, 112 S. E. 599, that by express words

the gift of a residuum may be restricted to particular property. This, they say, is the case here.

They argue that when the residuary clause, which comprises the whole of article "Sixth" of the will, is read in connection with the immediately preceding clauses "(3)" and "(4)" of article "Fifth," in the light of the facts and circumstances known to the testator, it shows that he did not intend that the residuary clause should operate on or dispose of the "Dun Fund." In other words, they say, these provisions read together, in the light of known facts, demonstrate that the testator intended to die intestate as to this portion of his estate.

The appellants say that the testator knew, at the time he executed the will, that there was a possibility that the provision for the remainder over after the death or remarriage of his widow, which his mother had made in her will, would be declared void, and that, therefore, he had inherited in fee this large estate. Nevertheless, it is argued, in deference to his mother's wishes, he deliberately chose not to undertake to dispose of this portion of his estate and intended to die intestate with respect to it.

It is further argued that this position is fortified by the express wording of clauses "(3)" and "(4)". In clause "(3)", they say, the testator "has declared the property which his will *is to affect*." He said, they point out, that he had disposed of "all of my intangible personal property" by "a Trust Agreement of even date with this will," and that, "This will is, therefore, specifically designed to provide for the distribution of said real estate, tangible personal property, and money."

In clause "(4)", the appellants say, the testator "has declared the property which his will *is not to affect*." This is tantamount, they say, to a declaration "that his cousins take his mother's property, and if so, his legatees are not to take it."

There is evidence that the testator knew in the summer and early fall of 1933 that there was a possibility that it

might be judicially determined that he had inherited in fee the "Dun Fund," comprising one-third of his mother's estate. At that time he was negotiating a separation agreement with his second wife, Mrs. Helen Tierney Rucker. In order to put certain of his intangible personal property beyond her reach, he executed, under date of September 18, 1933, a deed of trust conveying and assigning to the Virginia Trust Company of Richmond, Virginia, and W. Allan Perkins, as trustees, a list of specified securities, to be held by them for purposes which we need not detail. In this instrument he likewise conveyed and assigned to the trustees "all right, title and interest, if any I may have, in and to any and all property that may herafter be held to have vested in me in fee (as distinct from right to income only) under the provisions of the will of my mother, Lucy James Dun."

Mr. Perkins, who prepared the deed of trust, testified that although he had no independent recollection of having done so, he must have mentioned to Mr. Rucker the possibility of his (Rucker's) having inherited in fee a portion of his mother's estate. The fact that Mr. Perkins had no recollection of the matter would indicate, as he said, that both he and Mr. Rucker regarded the possibility of such inheritance as quite remote.

The appellants contend that Mr. Rucker acquired from other sources knowledge of this possible inheritance, but the record contains no clear proof of this.

But even if it be assumed that Mr. Rucker knew of the possibility or even the probability of this additional inheritance, it by no means proves that he intended to die intestate as to this large fortune in order that the provisions of his mother's will might become effective. There are many things which clearly negative such intent.

Looking first at the language of the will itself, clause "(3)" clearly indicates that the testator, through the means of the trust agreement and the will, executed contemporaneously, was disposing of his entire estate. It is true that in this clause he said that he had disposed of all of his

"intangible personal property" by a trust agreement of even date with the will, and that, therefore, the latter instrument was "specifically designed" to provide for the distribution of his "real estate, tangible personal property, and money." However, this provision is followed by the broad residuary clause which disposes of "all the rest and residue of my estate, of every kind and description, real, personal and mixed, and wherever situated." It is elementary that the purpose and import of such a clause are to dispose of the remaining property of the testator not specifically devised or bequeathed.

The recital that he had disposed of all of his "intangible personal property" by the trust agreement was, of course, an error. He had not done so. He had not disposed of this interest in his mother's estate, nor had he disposed of certain other intangibles.

In the decree appealed from it was held that certain intangibles, valued at $5,816, passed by virtue of the residuary clause. There is no assignment of error with respect to this item, and the appellants concede that in so far as these intangibles are concerned this interpretation of the residuary clause is correct. And yet the only distinction the appellants draw between these intangibles and the "Dun Fund" is that of amount or value.

While, as the testator said, the will was "specifically designed to provide for the distribution" of his "real estate, tangible personal property, and money," that was not its sole and exclusive purpose.

In one paragraph he specified the character of the religious services for his burial and the place of his interment. In another he disposed of certain accounts due to him. In the "Fourth" article he exercised a power of appointment vested in him under deed of October 26, 1921, thus disposing of intangibles of the conceded value of $127,000. In another paragraph he excluded certain relatives and gave an explanation therefor, and in the residuary clause he gave, devised and bequeathed all the rest and residue of his estate, of every

kind and description, real, personal and mixed, and wherever situated, to residuary legatees.

We are of opinion that by the recitals in clause "(3)" the testator was merely explaining why, after having executed the trust agreement, he was making a will. It is clear that he intended, through both of these instruments, to dispose of his entire estate. These recitals were not intended to nullify, limit or restrict the operation of the all-inclusive residuary clause, or to indicate, as the appellants claim, that the testator intended to die intestate with respect to this large portion of his estate, with the result that it would pass to his next of kin.

The appellants attach much significance to the fact that while in the trust deed of September 18, 1933, Mr. Rucker conveyed any fee-simple interest which he might have had in his mother's estate, he did not include in clause "(3)" such interest as a part of his estate, for the distribution of which the will was "specifically designed to provide." This shows, they say, that he intended that the will was not to dispose of that portion of his estate.

But the objects and purposes of the two instruments were quite different. In the trust agreement Mr. Rucker was attempting to put beyond the reach of his estranged wife, pending a settlement with her, certain specified intangible property. Among the items conveyed was this possible interest in his mother's estate. It was necessary that it be specifically included in the conveyance in order to bar the possibility of the wife's participation therein.

On the other hand, it was not necessary that this possible interest be specifically mentioned in the will, for he knew that it would pass under the provisions of a broad residuary clause unless he expressed an intent to the contrary. *Blanken-baker* v. *Early, supra*.

Moreover, it is manifest from a reading of the will that the testator did not intend that his next of kin or heirs should share in his estate. Except for specific bequests of three items of sentimental value—an article of jewelry and two

paintings—he made no gifts to his relatives. He not only disinherited them, but in clause "(4)" he explained why he did so. He said: "I have no relatives closer in degree than first cousins; several of these I am only slightly acquainted with; several of them have substantial means of their own. Under the will of my mother, Mrs. Lucy James Dun, * * * all of these cousins are provided for:[1] hence, I have not felt it proper to include in this, my will, or in the Trust Agreement of even date herewith, any of my relatives other than those named, for all of whom I have a personal and affectionate regard."

It is difficult to see how the testator could have used clearer language to show his intent that these relatives were not to share in his estate.

Again, there is extrinsic evidence which clearly refutes the contention that the testator intended to die intestate with respect to any portion of his estate. He made unusual efforts to dispose of his entire estate by will. In addition to the will which is the subject of this controversy, the record contains copies of other wills, executed by him on April 12, 1929, January 27, 1933, October 16, 1933, and January 21, 1936. Each of these instruments is carefully prepared and disposes of the testator's estate in great detail. Each contains a residuary clause of broad import.

It is significant, too, that in each of these wills, beginning with that of January 27, 1933, there was inserted a provision similar to that in clause "(4)" in the will before us, explaining why no provision had been made for the testator's relatives.

It is inconceivable, we think, in the light of this background, that the testator intended to die intestate with respect to so large a portion of his estate. Certainly, if he had any such intent he would have incorporated it in his will by clear and unmistakable language.

But the appellants argue that the testator had great deference for his mother's wishes, as expressed in her will, that the

---

[1] Under the will of Mrs. Dun these cousins received two-thirds of her net estate exclusive of the "Dun Fund."

remainder in the "Dun Fund" should go to those who would
be his "next of kin * * * according to the laws of Maryland
* * * at the time of the death or remarriage of his widow,"
and that this was a compelling reason for his excluding such
fund from the operation of his will.

There are at least two ready answers to this argument.
In the first place, had the testator died intestate with respect
to the "Dun Fund," it would not have passed to those who
were his next of kin "according to the laws of Maryland,"
as desired and expressed in Mrs. Dun's will. The testator
was a resident of Virginia, and in case of intestacy his prop-
erty would have passed to his heirs or distributees as deter-
mined by the laws of this State. It is conceded that the list
of the testator's Virginia heirs or distributees includes many
persons who would not have inherited from him under the
laws of Maryland. Hence, his mother's wishes, as expressed
in her will, would not have been carried out even if the tes-
tator had died intestate with respect to the fund in question.

The only way in which the testator could have carried
out his mother's wishes with respect to the "Dun Fund" was
by specific bequests of that property in his own will to the
relatives designated by her. Certainly, he did not do this.
On the contrary, as we have pointed out, both the language
of the will itself and the extrinsic evidence show that he had
no such intent.

Again, the record contains conclusive proof that the tes-
tator had no such respect for his mother's wishes. In the
very trust agreement of September 18, 1933, which the appel-
lants rely upon as proof of the fact that the testator knew of
his interest in the "Dun Fund," there was incorporated a
residuary clause, under the provisions of which his interest
in this fund, along with the rest of his estate, passed to his
cousin, Sara Katherine Rucker. Not one of the Maryland
relatives who would have taken under Mrs. Dun's will was
mentioned in this instrument which disposed of the identical
fund in dispute.

While this trust agreement was placed in escrow pending

Mr. Rucker's negotiations with his estranged wife, and was never delivered, it clearly shows that despite his mother's wishes to the contrary, Mr. Rucker did not intend that his Maryland next of kin should share in the "Dun Fund."

We are of opinion that a reading of the will as a whole, in the light of the extrinsic evidence, refutes the contention of the appellants that the testator intended to die intestate with respect to this large portion of his estate. The lower court correctly held that this property passed under the residuary clause of the will. Accordingly, the decree appealed from is

*Affirmed.*