# Staunton

T. St. John Arnold, Robert W. Arnold, Jr., and Mary
Arnold Munt v. J. M. Groobey and Anne H. Guer-
rant as Executors of the Last Will and Testa-
ment of John M. Arnold, Deceased; Lillian
A. Calhoun, Lottie A. Fleetwood, Arthur
Arnold, George P. Arnold, Virginius
Arnold, Martha Booth, Mary Arnold,
Alfred Wilkins, Jr., Infant, Ran-
dolph Wilkins, Infant.

September 10, 1953.

Record No. 4092.

Present, All the Justices.

The opinion states the case.

*Carlton E. Holladay, Ernest W. Goodrich* and *Robert W. Arnold, Jr.,* for the appellants.

*Ashburn, Agelasto & Sellers, H. M. Jarvis* and *Charles Kaufman,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

John M. Arnold, a resident of the City of Norfolk, Virginia, died September 7, 1950. He had been a practicing attorney in that city since 1905, and had formerly served as its Commonwealth's Attorney. His parents were dead, he was unmarried, and left no direct descendants.

On September 14, 1942, while a patient in a hospital in the City of Washington, D. C., he prepared an holographic will. The will recites that he had just been told of the necessity for an operation and his recognition of the uncertainty of the result. He survived the operation, however, and lived about eight years thereafter.

The will contains thirteen clauses, of which Nos. 5 to 12, inclusive, are dispositive and No. 13 is a designation of executors. Clause 1 directs the payment of testator's debts; Clause 2 limits funeral and burial expenses to $200; Clause 3 asks that the employees of the undertaker act as pallbearers; Clause 4 requests the elimination of all flowers beyond one from each contributor. Beginning with Clause 5 testator disposes of his property as follows:

"5. My farm, known as Cuppe Larmh Spring Farm 100 Acres More or less located near Waverly, in Sussex County, Virginia. I give in fee simple to Robert W. Arnold, Jr. and his sister, Prince Arnold, Jointly along with all crops, tools, animals and chickens, and other property of whatsoever kind found on said farm. They all (sic) to pay the balance if any due on said farm.

"6. My cottage at 15th Street and Little Bay, Willoughby Beach, I give out right to Ann-H. Guerrant of Norfolk.

"7. My lot & wrecked cottage near 11th Street, Willoughby Beach, is to be sold, and the proceeds paid into my Estate.

"8. My house, and lot known as 620 Redgate Avenue Norfolk, My House and lot known as 611 Princess Anne Road Norfolk, and my house & lot known as 508 Fairfax Avenue, Norfolk, which are now rented out as apartments & rooms, I give all three parcels of land, the improvements thereon, and all of the personal property therein contained to Jack M. Groobey, now of Altoona, Penn. As Manager of A Loan Company branch office and to my brother, Arthur Arnold now of Illinois, working with railroad as Agent and operator and to Ann H. Guerrant now taking

care of said property in the City of Norfolk, jointly on the following conditions: * * *

"9. * * *

"10. My automobile, the title, to which is in my check book, here with me, and all other property of a personal nature not used in the operating of the farm and houses given to Jack Groobey, Arthur Arnold & Ann Guerrant, shall be sold privately or publicly, by my Executors, and the proceeds turned in as a Part of my Estate, and used to settle my debts. In addition to the automobile there will be my library and office furniture & jewelry found in my safe, stocks and bonds, with me here in Washington, in my safe and on account with Abbott, Proctor, Pain, brokers, Royster Bldg. in Norfolk. I also have some money on deposit in checking, savings and Christmas Savings account in the following banks—* * *

"11. The water system on the back porch of 611 Princess Anne Ave. is to be put down on the property there or 508 Fairfax Ave. as may be decided by Ann H. Guerrant.

"12. Any other property—my interest in the Home Estate at Waverly—is given to my brother Robert W. Arnold."

The will was duly probated, and J. M. Groobey and Anne H. Guerrant, the executors named therein, qualified, and proceeded to administer the estate. In accordance with the provisions of the will, the executors sold the lot and wrecked cottage near 11th Street at Willoughby Beach, mentioned in Clause 7, sold the tangible personal property described in Clause 10, and took possession of the bank deposits and brokerage accounts. From the money received they paid testator's debts, succession taxes, and the costs of administration, and had approximately $15,000 left for distribution.

The executors, being uncertain as to who was entitled to receive the above residue, instituted this proceeding praying the court to construe and interpret the will of their testator, and particularly Clause 12 thereof, and to direct them with respect to the distribution of the funds in their hands. The

precise question presented was whether, under Clause 12, the appellants, T. St. John Arnold, Robert W. Arnold, Jr., and Mary Arnold Munt, the heirs at law of Robert W. Arnold, who predeceased his brother, John M. Arnold, were entitled to receive said residuary estate, or whether there is an intestacy in respect thereto, and it should be distributed in accordance with our statute of descents and distributions. The contest is solely between the above named appellants and the surviving sisters and brothers and the children of other deceased sisters and brothers of the testator, the executors being mere stakeholders.

The cause came on to be heard on the pleadings, exhibits, and testimony taken *ore tenus*. The learned chancellor of the trial court held that the intent of the testator "as expressed in his will is that the residue in money in the hands of the executors, * * * should pass to his legal distributees under the Virginia statute of Descents and Distributions," and accordingly so ordered, adjudged and decreed.

In a letter announcing his decision, the chancellor said:

"The court is of the opinion that the only question to be decided is of the effect clauses 7 and 10 of the will have on clause 12. Clauses 7 and 10 preceding, of course, clause 12 direct the executors to sell certain described personal property and the proceeds to be 'paid into my estate;' that is, to be paid to those who under the statute of distributions would take. This construction does no violence to any rule of construction or to the testator's intention. Clauses 7 and 10 having disposed of the cash realized from the sale of specific property, it would not pass under clause 12. 'Any other property' used in clause 12 would certainly indicate to the court only that property which had not heretofore been disposed of."

There are numerous assignments of error; but the controlling question, as we see it, is whether the learned chancellor of the trial court correctly interpreted the language of the will in accordance with the established canons of construction.

The parties agree that in the construction of testamentary instruments, the fundamental rule is, that the intention of the testator, if not inconsistent with some established rule of law, must control. 20 M. J., Wills, § 77, page 243, and numerous cases cited.

"In the construction of wills, effect must be given to the intention of the testator, if that can be discovered and is consistent with the rules of law." *Sutherland* v. *Sydnor*, 84 Va. 880, 881, 6 S. E. 480.

"All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial." *Wornom* v. *Hampton N. & A. Inst.*, 144 Va. 533, 541, 132 S. E. 344; *Marcy* v. *Graham*, 142 Va. 285, 128 S. E. 550; *Kellam* v. *Jacob*, 152 Va. 725, 148 S. E. 835; *Whitehurst* v. *White*, 160 Va. 859, 169 S. E. 724; *Griffin* v. *Central National Bank, etc.*, 194 Va. 485, 74 S. E. (2d) 188.

"The well settled rules of construction require that the will be read as a whole, and all its clauses reconciled, if fairly possible to do so, in view of the language used; for it is the duty of the court to give effect to every part of the instrument, provided some effect can be given not inconsistent with the general intent as gathered from the whole will." *Jones* v. *Brown*, 151 Va. 622, 634, 144 S. E. 620.

"The accepted criterion, that intention of the testator is the polar star in the construction of wills, is found in *Conrad* v. *Conrad's Ex'or.*, 123 Va. 711, 97 S. E. 336. There it is said:

" 'In ascertaining this intention, the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the *expressed* intention of the

testator which is sought.' " *Home Miss. Board, Etc.* v. *Kirkpatrick*, 181 Va. 395, 398, 25 S. E. (2d) 281.

In *Sheridan* v. *Krause*, 161 Va. 873, 884, 172 S. E. 508, we said this:

"In construing a will there are two inquiries to be made. The first is, What is the intention of the testator as expressed by him in the words he has used? 'This is the animating spirit, the essence, the soul of the will. The words are the clothing, the mere vehicle used, to convey his ideas. When we once ascertain the intention of the testator, that is the governing principle, and must prevail, unless it violates some rule of law.' "

■ We think that the learned chancellor of the court below erred in holding that testator's direction that the proceeds from the sale of certain of his property be "paid into my estate," meant that such proceeds "be paid to those who under the statute of distributions would take," that is, in construing the word "estate" to be the equivalent of the word "heirs." We also think that he further erred in holding that "the cash realized from the sale of the specific property," mentioned in Clauses 7 and 10 had been "disposed of" by those clauses, and, therefore, was not within the coverage of the phrase "Any other property" used in Clause 12.

The word "estate" is the designation of the possessions and property of which a man may legally have the absolute and exclusive domain. It is a general term "comprehending everything real and personal over which the testator has a disposing power." *Neblett* v. *Smith*, 142 Va. 840, 852, 128 S. E. 247.

" 'Estate' and 'heirs' are not equivalent terms; the estate is the subject matter with which the grantor deals; the heirs are possible distributees." *Abraham* v. *Abraham*, 280 N. Y. S. 825, 245 App. Div. 302.

"An 'estate' is not a legal entity and is neither a natural nor artificial person. It is merely a name to indicate the sum total of the assets and liabilities of a decedent, or of an

incompetent, or of a bankrupt." *Bright's Estate* v. *Western Air Lines*, 232 Pac. (2d) 523, 524, 104 Cal. App. (2d) 827.

Testator's direction that the property described in Clause 7 be sold and "the proceeds paid into my Estate," and that described in Clause 10 be sold and the proceeds "turned in as a part of my Estate, and used to settle my debts" did not constitute a testamentary disposition of the described property. The proceeds from the sales merely represented a conversion of that property into cash. The direction that the proceeds be used to "settle" testator's debts was merely a direction for the use of so much of such cash as was needed in the performance of a required duty. Neither Clause 7 nor 10 disposed of the residue after the payment of testator's debts. The residue remained a part of the estate of testator, subject to be disposed of as he further directed, and passed under the residuary provision of clause 12.

The appellees contend, however, that Clause 12 is not a residuary clause, because it does not contain the word "residue," "remainder," or any word of like import; that the word "other" in the phrase "Any other property" refers to the property "not previously mentioned" in the will; that the words, "My interest in the Home Estate at Waverly," included between the dashes, "were used by the testator to define and identify the only real property in which he had an ownership interest not mentioned in any earlier portion of the will," and did not include the money in the hands of the executors. They insist that the enumeration of the real property requires that the clause be construed to deal only with property of the same kind. (The interest of testator in the home estate at Waverly had been disposed of by him prior to his death.)

Quoting with approval from Schouler on Wills (3rd Ed.) § 522, we said in *Prison Association* v. *Russell*, 103 Va. 563, 567, 49 S. E. 966:

" 'No particular form of words is necessary to constitute a residuary legatee; any expression is sufficient from which

the testator's intention is discernible that the person designated shall take the surplus. Nor is it of controlling consequence that the clause is not the last of the disposing provisions, though such is the usual position. Woerner's American Law of Administration (2d Ed.), sec. 462.

" 'The residue is that part of a testator's estate not otherwise disposed of; hence a general residuary bequest carries with it everything not in terms disposed of, * * * .

" 'Such words as "rest," "residue," "remainder," are not indispensable to a residuary bequest of personal estate; but in various instances words and expressions quite informal have been given this effect, out of regard to the testator's obvious intention. A devise of this character has been held, agreeably to the intent of the will, to carry all the real estate, although "money" was the term employed.' "

In the setting in which it is here found the term "Any other property," has, in our opinion, a meaning of the same purport as "rest," "residue," or "remainder." Colloquially speaking, it means the "balance" of testator's property, that is, what remained or was left after the dispositions made.

In *Miars* v. *Bedgood*, 9 Leigh (36 Va.) 361, the will under review contained the following language:

"I do hereby appoint James Bedgood my executor to this my last will and testament, and that he shall receive the balance of my estate, if any."

The testatrix there died possessed of furniture worth about $200 and money in the sum of $2,978. The only serious issue was whether she made a valid bequest of the money, which was found in her house, to Bedgood. In holding that the word "balance" comprehended all of the residue of testatrix's property, the money as well as any other balance of her estate, the court said:

"The difficulty here is suggested by the fact appearing aliunde, that she had a considerable sum of money in the house; and hence it is inferred that she could not intend to bequeath it by words implying, as it is said, a doubt whether she would leave any balance. The words, however, are

plain and comprehensive; and being so, they should not be limited by such considerations." (9 Leigh (36 Va.), page 368).

The testator's use of the comprehensive word "property" in Clause 12 is highly significant. In defining the word "property," we said in *Mayo* v. *Carrington*, 4 Call (8 Va.) 472, 476: "The word property, we think, comprehends everything that had not been disposed of. For, generally speaking, it is just as applicable to lands as to personalty; * * * ."

In *Robinett* v. *Taylor*, 121 Va. 583, 590, 93 S. E. 616, Judge Burks said:

"The word 'property' is one of the most comprehensive that could have been used in this connection and is certainly comprehensive enough to cover real estate as well as personal property."

See also *Seekright* v. *Carrington, et al.*, 1 Wash. (1 Va.) 45; Words and Phrases, Vol. 34, page 405, *et seq.*; Succession of Burnside, 35 La. Ann. 708.

It is obvious that the testator treated all of his possessions and assets as property. He used the word "property" indiscriminately and without distinction as to different classifications throughout his will. In Clause 5, after disposing of real estate and personal property, he refers to "other property of whatsoever kind found on said farm." Manifestly, he there refers to personal property. In Clause 8, he disposes of real estate "and all of the personal property therein contained." He then refers to Anne H. Guerrant "now taking care of said property," obviously including both real and personal property. In Clause 9 he uses the word "property" as applied to real estate, to the income therefrom, and to both real estate and rentals. In Clause 10, he uses the phrase "all other property of a personal nature." In Clause 11, he refers to real estate under the description of "property." Therefore, testator's disposition in Clause 12 of "Any other property" was clearly a disposition of the residue of his estate.

No principle of testamentary construction is more firmly settled in Virginia than that there is a strong presumption that every testator intends to dispose of his entire estate, a presumption intensified where he uses a general residuary clause, and the courts are inclined very decidedly against adopting any construction of wills which leaves the testator intestate as to any portion of his estate, unless that result is inescapable.

In *McCabe v. Cary's Ex'r.*, 135 Va. 428, 116 S. E. 485, this was said:

"The only reason anyone can have for making a will is to change the devolution of his property from that prescribed by the statutes of descent and distributions. Hence there is a strong presumption that the testator intended to dispose of his entire estate, and courts are decidedly averse to adopting any construction of a will which leaves a testator intestate as to any portion of his estate, unless compelled to do so."

As Justice Holt, later Chief Justice, said in *Neblett v. Smith, supra,* 142 Va., page 850:

" * * * there are few testators whose settled purpose was to leave untouched a part of their estate, and a residuary clause adds force to this rule.

"Testators write wills that their estates may pass under them."

This rule has been stated and approved time after time in numerous cases. *Smith v. Smith,* 17 Gratt. (58 Va.) 268; *Gallagher, et al. v. Rowan's Adm'r., et al.,* 86 Va. 823, 11 S. E. 121; *Honaker v. Starks,* 114 Va. 37, 39, 75 S. E. 741; *Bowe v. Bowe,* 118 Va. 28, 86 S. E. 856; *Prison Association v. Russell, supra; Coffman's Adm'r. v. Coffman,* 131 Va. 456, 466, 109 S. E. 454; *Neblett v. Smith, supra; Jones v. Brown,* 151 Va. 622, 144 S. E. 620; *Sheridan v. Perkins,* 186 Va. 465, 42 S. E. (2d) 853; *Disney v. Wilson,* 190 Va. 445, 454, 57 S. E. (2d) 144; and in the recent case of *Bradshaw v. Bangley,* 194 Va. 794, 800, 75 S. E. (2d) 609.

It is to be presumed that testator knew the general extent of his debts, the liability of his estate therefor, and that the proceeds from the sale of his property mentioned in Clauses 7 and 10 would become a part of his estate, and that such as remained after his debts were paid would continue to remain as a part of his estate and subject to his disposal.

In the making of his will, it is evident that testator did not mean to die intestate as to any part of his estate. After making a number of specific provisions disposing of certain described property, he realized that he owned or had an interest in property of which he had not disposed. He sought to dispose of this property in Clause 12 by using the comprehensive phrase, "Any other property." These words, in the sense and setting in which they were used and found, mean what they say. They include "any" property, real or personal, "other" than that which testator had disposed of in the prior provisions of his will. The use of the words "My interest in the Home Estate at Waverly" included between the dashes indicates only that the named interest in this real estate, which had not been theretofore mentioned in the will, was intended to be included with "Any other property" given by the testator to Robert W. Arnold.

To escape the effect of the rule that a testator is presumed to have intended not to die intestate as to any part of his estate (*Bradshaw* v. *Bangley, supra,* 194 Va., page 801), appellees argue that it is of no greater force than the rule that an heir is not to be disinherited except by express words or necessary implication. See *Neblett* v. *Smith supra,* 142 Va. page 849. Here, the language of the will and the sense in which it is used brings the exception into play. The intention of the testator in Clause 12 to dispose of the residue of his estate is manifested with such necessary implication as to amount to a legal certainty. There is an implication of so strong a probability of such intention that no contrary intention can be supposed. *Jones* v. *Brown, supra,* 151 Va. page 630.

A further contention is that the enumeration of testator's interest in the home estate at Waverly in Clause 12 requires a construction that that clause deals only with real estate, upon the principle of *ejusdem generis*. The case of *Minor's Executrix* v. *Dabney*, 3 Ran. (24 Va.) 191, is relied on. The bequest there was of "my books, medicine, and shop furniture, and all the estate not before devised, including my gig and saddle-horses." Under that devise, the residuary legatee claimed a tract of land, a number of slaves, some houses and lots. and the remainder interest after life estate in certain personal property. It was held that the lots, including the lot on which the shop was erected, and slaves did not pass; but that the legacy was restricted to property *ejusdem generis*. That case will not apply here, because there is no legacy of specific property to Robert W. Arnold, either in Clause 12 or any other clause of the will, with which to connect the residuary legacy, so as to make the latter of a like kind with the former.

In 57 Am. Jur., Wills, § 1130, page 724, this is said:

"The ejusdem generis principle, as applied to the interpretation of wills, is subject to certain limitations. It is only a rule of presumption and must yield to the testator's intention, as expressed in the whole instrument."

In an annotation on "Effect of designation of particular property in residuary clause of a will," in 128 A. L. R. page 823, listing among the authorities, *Mayo* v. *Carrington*, 4 Call (8 Va.) 472, 2 Am. Dec. 580, it is said:

"The mere designation or enumeration of particular property in a residuary clause of a will, in connection with general words of disposition, does not restrict or limit the property passing by such clause to that designated, or to property of a like nature with that designated; and property within the import of the general words may pass under the clause, although not within the description of the property specifically designated."

As we have often said, little or no aid is is to be gotten from prior decisions construing other wills, because it is

rare to find two cases alike in all respects. "It often happens that the same identical words require very different constructions in different cases, according to the context and the peculiar circumstances of each case." *Rhett* v. *Mason's Ex'or.*, 18 Gratt. (59 Va.) 541, 560; *Conrad* v. *Conrad,* 123 Va. 711, 715, 97 S. E. 336; *Bennett* v. *Bradley*, 149 Va. 746, 752, 141 S. E. 756; *Whitehurst* v. *White*, 160 Va. 859, 866, 169 S. E. 724; *Ward* v. *Ottley*, 166 Va. 639, 642, 186 S. E. 25; *Griffin* v. *Central National Bank, etc., supra*, page 489, *et seq.*

In view of our conclusion that both the language employed in the will and the presumption against intestacy require that Clause 12 be construed as a general residuary clause, we do not reach the assignment relating to the admissibility of parol evidence to show the intention of the testator.

For the foregoing reasons, we are of opinion that the appellants are entitled to receive all of the estate of which John M. Arnold died seized and possessed, not specifically disposed of in his will. Therefore, the decree of the lower court will be reversed and a final decree here entered in accordance with the views above expressed. Under the circumstances, the costs of this proceeding are to be paid by the executors out of the funds of the estate of John M. Arnold, in their hands.

*Reversed and final decree.*