# Richmond

F. Wayne McLeskey, V. A. Etheridge, A. T. Taylor and C. Roger Malbon v. Virca Realty Corporation.

November 27, 1961.

Record No. 5343.

Present, All the Justices.

*Edward T. Caton, III* and *Reid M. Spencer* (*John B. James; James, Wahab & Spencer*, on brief), for the appellants.

*T. L. Sawyer* and *Richard J. Alfriend, III* (*W. P. Dickson, Jr.; Willcox, Cooke, Savage & Lawrence; Nusbaum & Alfriend*, on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Virca Realty Corporation, assignee of John Paul Woodhouse, filed its bill in the court below against Grace Woodhouse Prince, F. Wayne McLeskey, and others praying for the partition of a tract of land containing about 1,500 acres located at Washwoods, in Pungo Magisterial District, Princess Anne county, Virginia, just north of the North Carolina line, bounded on the east by the Atlantic Ocean, on the west by Back Bay, and on the north by the False Cape property. F. Wayne McLeskey and the other appellants answered claiming an interest in the land through D. Stormont, their predecessor in title.

The cause was referred to a special master who after hearing the evidence reported that the interest of the appellants was limited to a strip of land, referred to in the proceedings as "Sand Beach," 1,500 feet wide, beginning about 2,851 feet north of the North Carolina line, and extending northwardly along the ocean for a distance of about 10,850 feet. In reaching that conclusion the special master rejected the claim of the appellants that they were also entitled to an interest in certain marshlands lying between "Sand Beach" on the east and Back Bay on the west. From a decree overruling the appellants' exceptions and confirming the report they have appealed, making the same contentions which they did in the lower court.

The property, which is the subject of this partition suit, was acquired by John Thomas Woodhouse, a resident of Princess Anne county, by a deed from W. D. Pender and wife, dated March 25, 1896, and therein described as containing "seven hundred (700) acres more or less." By the terms of his holographic will, admitted to probate on September 27, 1917, John Thomas Woodhouse devised it to his son, John Paul Woodhouse, and his daughter, Grace Woodhouse Prince, by this language:

" * * * I give all my gunning and marshlands on the eastern side of Back Bay consisting of Big and Little Ball Islands, Cape Porpoise Island, the Newbern and Tripp tracts containing some 700 acres, more or less, to my son and daughter jointly. I give my son a strip of Sand Beach 500 yards wide and running from False Cape Life Saving Station to the North Carolina State line."

After disposing of several other items of real and personal property there is this residuary clause:

"All the residue of my estate real, personal or mixed, if any, I give to my son John Paul Woodhouse."

It is conceded by all of the parties that under the second sentence

in the quoted paragraph of the will, John Paul Woodhouse was devised the Sand Beach strip. The controversy here turns on whether under the residuary clause he was devised an interest in the "gunning and marshlands" referred to in the first sentence.

The appellants contended in the lower court, as they do on appeal, that under the first quoted sentence it was the purpose of the testator to devise to his son and daughter jointly only that portion of the "gunning and marshlands * * * consisting of Big and Little Ball Islands, Cape Porpoise Island, the Newbern and Tripp tracts," and that the rest of the property referred to in that sentence passed to John Paul Woodhouse under the residuary clause.

The special master and the lower court held that under the first quoted sentence all of the "gunning and marshlands" were devised to the son and daughter jointly, and that no part thereof passed to the son under the residuary clause.

John Paul Woodhouse died intestate on July 11, 1952. On May 29, 1950, he entered into a written contract whereby he agreed to sell to Virco Realty Corporation his remaining interest in the properties which had been devised to him under his father's will. Some years prior to the execution of this contract he had executed several deeds, duly recorded, whereby he conveyed to D. Stormont, the appellants' predecessor in title, undivided interests in the Sand Beach strip. The appellants seem to claim that these conveyances were intended to include also an interest in the "gunning and marshlands," other than the named islands and the Newbern and Tripp tracts, referred to in the first quoted sentence of the will.

The appellants argue that it was the purpose of the first sentence to devise to the son and daughter jointly only the three islands and two tracts of land, because, they say, the words "consisting of" were intended as words of limitation confining the joint devise to these specified parcels. It is true that ordinarily the words "consisting of" following words of a general description raise a *prima facie* inference or presumption that the general description is to be limited by the particular enumeration. However, it is well settled that this is merely a *prima facie* inference or presumption and must yield to the testator's intention as expressed in the whole instrument. Page on Wills, Lifetime Ed., Vol. 3, § 983, pp. 75, 76; 57 Am. Jur., Wills, § 1130, p. 724; *Arnold* v. *Groobey*, 195 Va. 214, 226, 77 S. E. 2d 382, 389; *Cuppett* v. *Neilly*, 143 W. Va. 845, 105 S. E. 2d 548, 559.

A reading of the three provisions of the will here involved, in the light of the surrounding circumstances, shows that it was not the

intention of the testator to limit the joint devise to the several specified parcels. In the first place, if it had been the intent to so limit the land included in the joint devise, there would have been no occasion for the specific devise of the Sand Beach strip to his son because he would have acquired that property under the residuary clause.

Again, according to the plats found in the record the acreage of the respective five parcels is as follows: Big Island, 265 acres; Little Ball Island, 10 acres; Cape Porpoise Island, 39 acres; Newbern tract, 29 acres; Tripp tract, 29 acres; or a total of 372 acres. The special master reported that except for these several parcels the testator had sold most of his property lying between Sand Beach and Back Bay, and that the remaining property, including the five specified parcels, would not "begin to approximate seven hundred acres."

Moreover, it is extremely unlikely that the testator would have referred to these five parcels as "containing 700 acres," when he must have known that the source of his title to all of his land in that area, including the Sand Beach strip, described it as containing that acreage.

We agree with the special master and the lower court that it was the intention of the testator to dispose of all of his property in the area under the first two quoted sentences of the will. Under the first sentence it was the intent to devise all of his "gunning and marshlands" on the eastern side of Back Bay, including the five specified tracts, to his son and daughter jointly. Under the second sentence the Sand Beach strip was devised to his son. Under the residuary clause the son was devised no interest in any of these particular properties.

Having reached this conclusion it is unnecessary that we decide whether under the deeds from John Paul Woodhouse to Stormont, upon which the appellants rely, the grantor, as residuary devisee, intended to convey any interest in the "gunning and marshlands" referred to in the first quoted sentence of the will.

In short, we agree with the special master and the lower court that subject to the rights of the Virca Realty Corporation, as assignee of John Paul Woodhouse, the latter died seized of an undivided one-half interest in the property referred to in the first quoted sentence of the will, lying between the Sand Beach strip on the east and Back Bay on the west, and that the appellants have no interest therein.

Under the view we have taken of the matter it is unnecessary that we consider the other questions discussed in the briefs.

For these reasons the decree appealed from is

*Affirmed.*